UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MAR-CONE APPLIANCE PARTS CO.,

                       Plaintiff,

    v.

MICHAEL MANGAN,
SERVALL COMPANY,

                       Defendants.

_____

MICHAEL MANGAN,

                Third-Party Plaintiff,

     v.

JOHN GIARDINO,
ADAM GREENBERGER,

                Third-Party Defendants.

_____

**REPORT**
**and**
**RECOMMENDATION**

**10-CV-999A(F)**

APPEARANCES:      PHILLIPS LYTLE LLP
                         Attorneys for Plaintiff
                         JAMES D. DONATHEN,
                         CHAD W. FLANSBURG, of Counsel
                         3400 HSBC Center
                         Buffalo, New York    14203-2887

                         DUKE, HOLZMAN, PHOTIADIS & GRESENS, LLP
                         Attorney for Defendant and Third-Party
                             Plaintiff  Michael Mangan
                         PATRICIA GILLEN, of Counsel
                         1800 Main Place Tower
                         350 Main Street
                         Buffalo, New York    14202

                         JAECKLE FLEISCHMANN & MUGEL, LLP
                         Attorney for Defendant Servall Company
                         B. KEVIN BURKE, JR., of Counsel
                         Avant Building, Suite 900
                         200 Delaware Avenue
                         Buffalo, New York    14202

LITCHFIELD CAVO LLP
Attorneys for Third-Party Defendants Giardino and
    Greenberger
EDWARD M. FOGARTY, JR., of Counsel
420 Lexington Avenue, Suite 1750
New York, New York   10170

## JURISDICTION

This matter was referred to the undersigned for all pretrial matters by order of

Hon. Richard J. Arcara on December 13, 2010 (Doc. No. 31).  It is now before the court

on Third-Party Defendants' Motion to Dismiss filed October 4, 2011 (Doc. No. 119).

## BACKGROUND

This action was initially commenced on September 1, 2010 by Plaintiff's

subsidiary Marcone APW, LLC ("Mar-Cone APW") in the Eastern District of Missouri

(St. Louis) alleging *inter alia* breach of contract and fiduciary duty against Defendant

Michael Mangan ("Mangan") and tortious interference, unfair competition and

conversion claims against Mangan and the Servall Company ("Servall").  The case was

transferred to this district on December 10, 2010, for lack of personal jurisdiction over

Mangan and improper venue (Doc. No. 27).  Plaintiff's motion for leave to file a second

amended complaint was granted by Decision and Order filed April 28, 2011 (Doc. No.

59).[1]  On April 29, 2011, Plaintiff filed its Second Amended Complaint ("Second

Amended Complaint") (Doc. No. 60) alleging several state law claims against Mangan,

---

[1]  Mar-Cone APW previously obtained leave to file an amended complaint changing the name of plaintiff Mar-Cone Appliance Parts Oc. ("Plaintiff" or "Mar-Cone") (Doc. No. 14).

specifically breaches of (1) an employment agreement ("Plaintiff's First Claim"), (2) a non-disclosure agreement ("Plaintiff's Second Claim"), (3) the implied covenant against solicitation of former customers under the so-called Mohawk Doctrine[2] ("Plaintiff's Third Claim" or "Mar-Cone's Mohawk Doctrine Claim"), and (4) Mangan's fiduciary duty of loyalty to Plaintiff ("Plaintiff's Fourth Claim").  Plaintiff also alleges a tortious interference claim against Servall ("Plaintiff's Fifth Claim").

Following filing, on May 15, 2011 (Doc. No. 65), of an answer to the Second Amended Complaint with counterclaims Mangan moved as required by Fed.R.Civ.P. 14(a), on June 7, 2011, for leave to serve a Third-Party Complaint (Doc. No. 69), which was granted on August 9, 2011 (Doc. No. 102).  Mangan's Third-Party Complaint was filed on August 11, 2011 (Doc. No. 105)  ("Third-Party Complaint") against Third-Party Defendants John Giardino ("Giardino") and Adam Greenberger ("Greenberger") (together "Third-Party Defendants").[3]  In the Third-Party Complaint Mangan sought indemnification and contribution from Third-Party Defendants for any damages awarded to Plaintiff under Plaintiff's Third Claim, along with Mangan's costs of defense, including attorneys fees, based on Third-Party Defendants' breach of fiduciary duty ("Mangan's First Claim for Relief") and from Third-Party Defendant Greenberger based on Greenberger's false representation ("Mangan's Second Claim for Relief" together

---

[2]  Named after *Mohawk Maintenance Co., Inc. v. Kessler,* 419 N.E.2d 324, 329-30 (N.Y. 1981) (voluntary seller of business good will permanently prohibited from soliciting former customers based on implied covenant not to infringe on buyer's purchase) ("the Mohawk Doctrine") ("*Mohawk*").  *See Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 80 (2d Cir. 2010) (referring to the holdings in *Von Bremen v. MacMonnies*, 93 N.E. 186 (N.Y. 1910) and *Mohawk* as "the Mohawk Doctrine").

[3]  Giardino was served with the Third-Party Complaint on August 25, 2011 (Doc. No. 111); Greenberger was served on August 29, 2011 (Doc. No. 112).

"Mangan's Contribution Claims").

By papers filed October 4, 2011, Third-Party Defendants moved, in lieu of answer, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(c), to dismiss the Third-Party Complaint (Doc. No. 119) ("Third-Party Defendants' motion").  At the same time, Third-Party Defendants filed the Declaration of Edward Fogarty, Jr. in Support of Motion to Dismiss Third-Party Complaint ("Fogarty Declaration") (Doc. No. 120) together with Exhibits A-H ("Fogarty Declaration Exh(s). ___")[4] and a Memorandum of Law in Support of Motion to Dismiss Third-Party Complaint (Doc. No. 121) ("Third-Party Defendants' Memorandum").

On November 4, 2011, in opposition to the Third-Party Defendants' motion, Mangan filed the Affidavit of Patricia Gillen (Doc. No. 126) ("Gillen Affidavit") and the Affidavit of Michael G. Mangan ("Mangan Affidavit") (Doc. No. 126-1) together with Exhibits A-D ("Mangan Affidavit Exh(s). ___")[5] and Defendant and Third-Party Plaintiff Michael Mangan's Memorandum of Law (Doc. No. 126-2) ("Third-Party Plaintiff's Memorandum").  On November 15, 2011, Third-Party Defendants filed their Reply Brief in Opposition to Motion to Dismiss Third-Party Complaint (Doc. No. 129) ("Third-Party Defendants' Reply").  At the court's request, (Doc. No. 141), Mar-Cone submitted, on May 30, 2012, an explanation of its claims pending against Mangan in this court, and those pending against Mangan in New York Supreme Court, Erie County (Doc. No.

---

[4]  Fogarty Declaration Exh. C is an Affidavit of Michael Mangan dated October 6, 2010 filed in support of Mangan's motion to dismiss Plaintiff's action then filed in the district court, E.D.Mo. (St. Louis), ("Mangan Affidavit I").

[5]  Mangan Affidavit Exh. A is the Affidavit of Michael Mangan (Doc. No. 126-1) dated April 29, 2011, submitted in opposition to Plaintiff's motion for leave to file a second amended complaint ("Mangan Affidavit II").

142).  On May 31, 2012, Third-Party Plaintiff filed a reply to Mar-Cone's submission (Doc. No. 143).  Oral argument was deemed unnecessary.  Based on the following, Third-Party Defendants' motion should be GRANTED.


## FACTS[6]

A.P. Wagner, Inc. ("APW"), based in Depew, New York, was a major supplier of appliance replacement parts to wholesalers located in the Northeast region of the United States.  Second Amended Complaint ¶ 8.  Mangan joined APW in 1990, becoming executive vice-president in 2006 and later its president.  *Id.* ¶ 10; Mangan Affidavit I ¶¶ 2-3.  In June 2006, APW was acquired by APW Holding, Inc.  ("APW Holding"), a Delaware corporation of which Giardino and Greenberger were majority shareholders, at which time Mangan received 75 shares of APW Holding constituting 1.709% of this company's stock.  Mangan Affidavit II ¶¶ 4, 6; Third-Party Complaint ¶¶ 20-21; Fogarty Declaration Exh. E ¶ 1 (Subscription Agreement for Non-Voting Common Stock of APW Holding, Inc. ("Subscription Agreement")).[7]  Several other APW employees also received shares in APW Holding at this time.  Mangan Affidavit II ¶ 7. Third-Party Defendants owned the balance of the shares of APW Holding.  Third-Party Complaint ¶ 20.  Under a stockholders' agreement, executed by Mangan in July 2006, Mangan, as a minority shareholder in APW Holding, lacked voting rights and was

---

[6]  Taken from the pleadings and papers filed in connection with this action.

[7]  Fogarty Declaration Exh. E (Doc. No. 120-6) is comprised of two documents: the first is a Subscription Agreement constituting four pages; the second is a Stockholders Agreement constituting 16 pages.

required to sell his shares to APW Holding in the event the company was sold.[8]
Fogarty Declaration Exh. E ¶¶ 8-10 ("Stockholder's Agreement"); Mangan Affidavit ¶ 8
(acknowledging Mangan was subject to "drag along" rights to receive payment for his
shares in the event majority shareholders exercised their sole authority to sell
company).  In June 2006, Mangan and APW entered into an employment agreement
which provided for Mangan's at will termination upon six-months notice and termination
for cause upon five-days notice.  Fogarty Declaration Exh. G ("Employment
Agreement") ¶¶ 1.1-1.2; 2; 3.  In the event of Mangan's termination of employment with
APW, APW had the right to immediately repurchase any shares in APW then owned by
Mangan.  Third-Party Complaint ¶ 24; Mangan Affidavit ¶ ¶ 9 n. 1, 21; Mangan Affidavit
Exh. B, Employment Agreement Revised 2/14/2007 ("Revised Employment
Agreement") ¶ 2.6.  Mangan was granted severance pay for six months of his salary if
terminated without cause, Revised Employment Agreement ¶ 3(d); a provision in the
agreement required Mangan not to compete with APW for two years following
termination for cause; however, in the event of a termination without cause, Mangan's
non-competition period was reduced to one-year.  *Id.* ¶ 4.  The agreement additionally
required Mangan not to disclose APW's confidential and proprietary information,
including customer information.  *Id.* ¶ 5.

Mar-Cone is also a major distributor of appliance replacement parts
headquartered in St. Louis, Missouri.  Second Amended Complaint ¶ 1.  Servall,
headquartered in Michigan, is one of Mar-Cone's prime competitors.  *Id.* ¶ 9.  In

---

[8]  It is unclear from the record whether Mangan, prior to APW's purchase by APW Holding in
2006, received shares in APW or received shares in APW thereafter.

January 2010, Mar-Cone acquired all of the assets of APW Holding particularly APW

and its customer lists and goodwill. *Id.* ¶ 11; Mangan Affidavit I ¶ 4.[9]  At the time of the

acquisition, Mangan was president of APW.  Mangan Affidavit ¶¶ 4, 7.

In connection with Mar-Cone's asset purchase of APW, Mangan signed, on

December 30, 2009, a Non-Disclosure Agreement with Mar-Cone APW, LLC as a

shareholder of APW Holding, Fogarty Declaration Exh. F ("Non-Disclosure

Agreement"), which required Mangan to maintain as confidential Mar-Cone's proprietary

information including APW's customer lists and prospective customer information

acquired by Mar-Cone through its purchase of APW Holding's assets pursuant to a

purchase agreement between Mar-Cone APW LLC and APW Holding ("the Purchase

Agreement").[10]  As a selling shareholder of APW Holding, Mangan received payment

for the value of his ownership interest in APW Holding and APW.  Second Amended

Complaint ¶ 18; Mangan Affidavit ¶ 21; Non-Disclosure Agreement at 1, ¶ D.

Thereafter, Mangan was employed by Mar-Cone at the APW facilities in this district as

a senior manager.  Second Amended Complaint ¶ 14.  After terminating his

employment with APW in March 2012, Mangan commenced employment with Servall in

July 2010 in this district and New Jersey in competition with Mar-Cone.  Second

Amended Complaint ¶¶ 24-25, Mangan Affidavit I ¶¶ 12, 17.

Giardino and Greenberger became principal shareholders of APW Holding and

---

[9]  In January 2010, Mar-Cone APW, LLC, Plaintiff's acquisition subsidiary ("the acquisition subsidiary") purchased the assets of APW Holding, Inc., Fogarty Declaration Exh. H at 1 n.1; following the merger of the acquisition subsidiary into Mar-Cone, Mangan Affidavit ¶ 5, Mar-Cone became the plaintiff in this action.  Doc. No. 14; Third-Party Complaint ¶ 12.

[10]  A copy of the Purchase Agreement is not included in the record.

APW in 2006, and allowed Mangan to acquire, pursuant to a stockholders agreement, a 1.8% stock ownership interest in APW[11] at that time.  Third-Party Complaint ¶¶ 19-23. According to the Third-Party Complaint, beginning in October 2009, Mangan learned that APW was to be sold to Mar-Cone and that Giardino and Greenberger directed other APW employees not to discuss the prospective sale with Mangan.  *Id.* ¶¶ 28-29. Mangan was informed by Giardino and Greenberger that his opinions regarding the sale would not be considered, and Mangan was not given notice of any shareholders vote on the sale.  *Id.* ¶¶ 30-31.  Mangan alleges that pursuant to the New York Business Corporation Law, Mangan, as a minority non-voting shareholder, was required to be given notice of any vote to sell the assets of APW and that as majority shareholders Giardino and Greenberger had a "fiduciary duty" to inform Mangan an asset sale of APW was being considered.  *Id.* ¶¶ 32-33.  Mangan also alleges that Greenberger advised him in December 2009 the APW sale was to be a "stock sale" such that had Mangan been correctly informed of the asset nature of the sale, Mangan would have terminated his employment with APW prior to the sale and sold his shares to APW or Giardino and Greenberger at a fair price and thereby avoid being subject to the Mohawk Doctrine following the sale of APW to Mar-Cone.  *Id.* ¶ 36.

Mangan further alleges that had he known the APW sale was to be an asset sale, he could have, under the New York Business Corporation Law, objected to the

---

[11]   Neither Mar-Cone in the Second Amended Complaint nor Mangan in the Third-Party Complaint distinguish between APW Holding and APW in describing as to which corporation Mangan's shares in fact were issued.  As it appears APW became a wholly-owned subsidiary of APW Holding in 2006, for the purposes of Third-Party Defendants' Motion, the court proceeds on the assumption that Mangan's shares in APW Holding represented Mangan's ownership interest in APW that was transferred to Mar-Cone for consideration pursuant to the Purchase Agreement as a component of the sale of assets.

sale and elected to require APW to repurchase his shares, again avoiding Mohawk Doctrine restrictions.  *Id.* ¶ 37.  Based on these allegations, Mangan asserts Giardino and Greenberger breached their "fiduciary duties" to Mangan rendering them subject to contribution for any damages imposed on Mangan under Mar-Cone's Mohawk Doctrine claim against Mangan.  *Id.* ¶ 40.

For a second contribution claim, Mangan alleges Greenberger's misrepresentation regarding the stock nature of the expected APW sale was false and material which induced Mangan into a belief his employment with Mar-Cone was secure, and that he had no right to demand APW to "repurchase his shares prior to the sale of APW to Mar-Cone.'  *Id.* ¶¶ 43-44.  According the Mangan, his reliance on Greenberger's misrepresentation was justifiable and Greenberger therefore is subject to a claim for contribution in the event Mangan is held liable to Mar-Cone for violation of Mar-Cone's rights under the Mohawk Doctrine.  *Id.* ¶¶ 45-46.

## DISCUSSION

1.   **Jurisdiction.**

Although Third-Party Defendants moved pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction, Doc. No. 119, Third-Party Defendants have not specifically briefed the issue.  However, even if Third-Party Defendants may be found to have thereby abandoned any challenge to the court's subject matter jurisdiction over the Third-Party Complaint, having had its attention directed to the question, the court is required to satisfy itself that subject matter jurisdiction exists over Mangan's Contribution Claims.  *See Gilman v. BHC Securities, Inc.*, 104 F.3d 1418,

9

1421 (2d Cir. 1997) (addressing subject matter jurisdiction raised by plaintiff in moving to remand case for lack of subject matter jurisdiction despite plaintiff's abandonment of remand motion, because court is bound to consider jurisdictional challenge raised at any stage of proceedings and may raise question *sua sponte* (citing *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994))).

Third-party claims, including as in this case, for contribution, brought pursuant to Fed.R.Civ.P. 14(a), require a basis for the exercise of subject matter jurisdiction by a district court.  Steven Baicker-McKee, William M. Jenssen, John B. Carr, FEDERAL CIVIL RULES HANDBOOK (West-Thomson Reuter 2012) at 535.  Here, as Mangan and Third-Party Defendants are all domiciled in New York, no basis for diversity jurisdiction under 28 U.S.C. § 1332 for Mangan's Contribution Claims exists.  Nor, as Mangan's Contribution Claims are founded on N.Y. C.P.L.R. § 1401 ("§ 1401") do they constitute claims arising under federal law creating federal claim subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Accordingly, as Mangan asserts, Third-Party Complaint ¶ 14 (court "has ancillary jurisdiction over" third-party complaint), subject matter jurisdiction for Mangan's Contribution Claims must be based upon the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  *See Grimes v. Mazda North American Operations*, 355 F.3d 566, 573 (6th Cir. 2004).  "Third-party claims by defendants for contribution against a third-party under Federal Rules of Civil Procedures 14(a) generally . . . fall within the court's supplemental jurisdiction if the impleaded defendant's actions share a 'common nucleus of operative fact' with the case already before the court."  *Grimes*, 355 F.3d at 572; *Federman v. Empire Fire and*

*Marine Ins. Co.*, 597 F.2d 798, 811 (2d Cir. 1979) (subject matter jurisdiction over

contribution claims based on professional negligence available under court's ancillary

jurisdiction arising out of same transaction as alleged in complaint asserting securities

fraud where third-party defendant was alleged to have assisted in preparation of

materially false registration statement upon which plaintiff's claims against defendant

were based).  *See also Metro Foundation Contractors, Inc. v. Arch Ins. Co.*, 2011 WL

2150466, *4 (S.D.N.Y.  May 31, 2011) (absent diversity of citizenship between plaintiff

and third-party defendant subject matter jurisdiction over third-party defendant's cross-

claim against plaintiff must be exercised under court's supplemental jurisdiction

pursuant to 28 U.S.C. § 1367(a)).  Joining a third-party defendant non-diverse to

plaintiff in the underlying action based on diversity of plaintiff and defendant does not

destroy subject matter jurisdiction grounded on the court's diversity jurisdiction over

plaintiff's claim.  *See Spring City Corporation v. American Buildings Company*, 193 F.3d

165, 169 (3rd Cir. 1999) (presence of third-party defendant non-diverse to plaintiff and

third-party plaintiff does not destroy subject matter jurisdiction over plaintiff's claim);

*Metro Foundation Contractors, Inc.*, 2011 WL 2150466, *4 (limitations of 28 U.S.C. §

1367(b) applicable only to claims by plaintiff against third-party defendant).

 The court therefore considers whether Mangan's Contribution Claims satisfy the

requirement of §1367(a) in that they are "so related" to Mar-Cone's claims against

Mangan based on diversity, particularly Mar-Cone's Mohawk Doctrine claim, that both

Mangan's Contribution Claims,"form part of the same case or controversy."  28 U.S.C.

§1367(a).  Mangan's Contributions Claims meet this criterion for supplemental

jurisdiction if they share or arise from the same or a "common nucleus of operative fact"

with Mar-Cone's claims.  *See Shahriar v. Smith & Wollensky Restaurant Group, Inc.*,
659 F.3d 234, 245 (2d Cir. 2011) ("For purposes of Section 1367(a), claims 'form part of
the same case or controversy' if they 'derive from a common nucleus of operative fact.'"
(quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 208 (2d Cir.
2004))); *Grimes*, 355 F.3d at 572 (same).  If the third-party claim meets this criterion the
court must exercise subject matter over the claim.  *See Metro Foundation Contractors,
Inc.*, 2011 WL 2150466, at *5 (finding plaintiff's claim for payment against defendant for
performance bond and third-party defendant's breach of contract cross-claim against
plaintiff arise out of same construction contract dispute between general contractor
plaintiff and sub-contractor third-party defendant and cross-claimant (citing *Itar-Tass
Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998))).  The
court therefore turns to whether Mar-Cone's Mohawk Doctrine Claim against Mangan
based on the sale of APW's good will to Mar-Cone, and Mangan's Contribution Claims
against Giardino and Greenberger are sufficiently related so as to arise out of same
nucleus of operative fact and thus satisfy the same case and controversy requirement
established by §1367(a).

As discussed, Discussion, *infra*, at 31-32, a diversion of business good will by a
seller of a business is considered an actionable business tort under New York law.  As
alleged in the Third-Party Complaint, the sale of APW, including its customer good will,
to Mar-Cone as an asset of APW Holding was accomplished without notice and the
participation of Mangan as a part owner of APW through his minority shareholder
position in APW Holding, an entity controlled by Giardino and Greenberger.  Third-Party
Complaint ¶¶ 21, 31, 33, 36.  Mangan does not dispute that he received significant

financial consideration for his shares as part of the asset sale transaction which resulted in the merger of APW's assets including its good-will into Mar-Cone.  Mangan's Contribution Claims turn on the theory that Giardino and Greenberger violated certain legal duties owed Mangan under fiduciary obligations imposed by New York law upon majority shareholders intending to sell the assets of a closely-held corporation and that Greenberger committed a misrepresentation actionable under New York law.  As a result, according to Mangan, had Giardino and Greenberger not violated such duties Mangan could have avoided any violation of the Mohawk Doctrine by disposing of his ownership in APW prior to its sale to Mar-Cone and therefore Giardino and Greenberger's violations of such duties contributed to Mar-Cone's damages sought against Mangan.

The key fact common to both Mar-Cone's Mohawk Doctrine claim and Mangan's Contribution Claims is the sale of APW to Mar-Cone, a transaction that indisputably involved the transfer of the ownership interests of Mangan, Giardino and Greenberger in APW represented by their respective positions as minority and majority shareholders of APW Holding.[12]  While Giardino and Greenberger's alleged misconduct as the basis for Mangan's Contribution Claims is not directly relevant to the merits of Mar-Cone's Mohawk Doctrine Claim against Mangan, absent the alleged transfer of APW's good will by Giardino, Greenberger, and Mangan through the asset sale to Mar-Cone, Mangan's Contribution Claims are drained of any merit.  Also, unless Mar-Cone's Mohawk Doctrine Claim against Mangan is sustained, Mangan's Contribution Claims

---

[12]  The shares of several other APW Holding minority shareholders, non-parties, were also transferred to Mar-Cone.

will fall as well.  Thus, the court finds Mangan's Contribution Claims to be "so related,"

§1367(a)  to the underlying Mar-Cone Mohawk Doctrine Claim in this action as to arise

from a "common nucleus of operative facts," *Shahriar*, 659 F.3d at 245; *Grimes*, 355

F.3d at 572, involving the sale of APW to Mar-Cone sufficient to sustain supplemental

jurisdiction pursuant to § 1367(a).

Nor should the court decline to exercise jurisdiction pursuant to 28 U.S.C.

§1367(c) ("§1367(c)").  Section 1367(c) authorizes the court to decline to exercise

supplemental jurisdiction if the claim "raises a novel or complex issue of state law,"

"substantially predominates over the claim or claims over which the district court has

original jurisdiction," the court "has dismissed all claims over which it has original

jurisdiction," or "in exceptional circumstances, there are other compelling reasons for

declining jurisdiction."  28 U.S.C. §1367(c).  Here, although whether a violation of New

York's Mohawk Doctrine qualifies as tortious conduct as a prerequisite to support a

potential contribution claim brought pursuant to §1401 may raise a question of first

impression under New York law, in light of the Second Circuit's recent definitive

statement that the doctrine is one sounding in New York tort law, Discussion, *infra*, at

33 (quoting *Bessemer Trust Co.,* 618 F.3d 76, 80, (2d Cir. 2010)), and as this court,

unlike a New York State court, is bound by Second Circuit precedent on point, this

threshold issue cannot be said to be "novel or complex," §1367(c)(1).  Further, whether

Mangan's assertions of breach of a fiduciary duty, imposed by New York corporation

law,  by Giardino and Greenberger, APW Holding's majority shareholders, as well as an

actionable misrepresentation by Greenberger which Mangan asserts contributed to

Mar-Cone's damages attributable to Mangan's Mohawk Doctrine violations may, for

14

purposes of Third-Party Defendants' motion, be deemed sufficiently plausible to state a claim under Rule 12(b)(6), involves the application of readily discernable provisions of the New York Business Corporation law and related caselaw and established New York caselaw defining a claim of misrepresentation.  Discussion, *infra*, at 39-44.  Accordingly, the court finds the validity of Mangan's Contribution Claims do not raise "novel or complex" issues of state law requiring dismissal pursuant to §1367(c).

Nor do Mangan's Contribution Claims predominate.  Mar-Cone's claims against Mangan raise several independent grounds for liability against Mangan for infringing Mar-Cone's rights to APW's good will and misuse of confidential information quite apart from, albeit related to, its Mohawk Doctrine Claim, as well as a separate and potentially significant tortious interference claim against Servall, an entity whose alleged misconduct is not, thus far, alleged to be directly related to Mar-Cone's Mohawk Doctrine Claim against Mangan.  Therefore, Mangan's Contribution Claims hinge upon the merits of only one of several other substantive claims asserted by Mar-Cone against Mangan and Servall, all equally based, like the Mangan's Contribution Claims, on New York law and therefore cannot be said to predominate over Mar-Cone's other claims in this action.  Nor has the court dismissed, or been requested to dismiss, such claims.

Finally, although there are several related claims currently filed by Mar-Cone pending in New York Supreme Court, Erie County, there is no indication that such claims are duplicative of the claims in this instant action, or that to exercise jurisdiction over Mangan's Contribution Claims would "'frustrate judicial economy.'" *Metro Foundation Contractors, Inc.*, 2011 WL 2150466, *5 (quoting *SST Global Tech., LLC v. Chapman*, 270 F.Supp.2d 444, 459 (S.D.N.Y. 2003)).  Relevantly, Mar-Cone's Mohawk

Doctrine claim is pleaded in this court only, and its other claims against Mangan, while related, do not directly duplicate or overlap Mar-Cone's claims against Mangan in the state action (Doc. No. 142 at 3).  Mangan does not dispute that Mar-Cone's Mohawk Doctrine claim is not asserted in the state court action but notes that there is a degree of overlap between the two cases in the sense that the scope of available damages against Mangan may be similar to those sought by Mar-Cone in the state action against Mangan and other defendants.  Therefore, given the circumstances of this case, "it is not clear that judicial resources would be preserved by declining to exercise supplemental jurisdiction over the state [contribution] claim[s] in this case." *Id.* (bracketed material added).[13, 14]  Accordingly, as none of the exceptions provided in § 1367(c) apply to Mangan's Contribution Claims, the court should not decline to exercise its supplemental jurisdiction over such claims.

2.      **Contentions of Parties**.

In this action, Mar-Cone alleges, *inter alia*, that as a result of Mar-Cone's acquisition of APW's assets, Mangan sold his ownership interest in APW to Mar-Cone for substantial consideration.[15]  Second Amended Complaint ¶ 18.  Mar-Cone further alleges that prior to the sale of APW's assets to Mar-Cone, Mangan contacted Servall and proposed employment whereby Mangan would compete with Mar-Cone by

---

[13]  Moreover, based on recent developments in the parallel state court proceedings, (Doc. No. 138) (minutes of the last status conference with the parties), there is a potential that these claims may be withdrawn and refiled in this court.

[14]  Unless otherwise indicated all bracketed material is added.

[15]  Mar-Cone asserts Mangan received "hundreds of thousands of dollars."  Plaintiff's Reply Memorandum of Law in Support of Motion for Leave to File and Serve Second Amended Complaint (Doc. No. 57) at 9.

soliciting APW's customers.  *Id.* ¶ 20.  According to Mar-Cone, since commencing

employment with Servall in July 2010, Mangan has actively solicited former APW

customers on behalf of Servall using proprietary customer information acquired by Mar-

Cone from APW as part of the asset sale.  *Id.* ¶¶ 24-25, 28.  Mar-Cone also claims that

Mangan, while employed by Mar-Cone, solicited Mar-Cone's former APW employees to

join Mangan in competing with Mar-Cone in violation of Mangan's duty of loyalty to Mar-

Cone as president of APW under the Revised Employment Agreement, an asset of

APW Holding acquired by Mar-Cone pursuant to the Purchase Agreement.[16]  Second

Amended Complaint ¶ 37; Non-Disclosure Agreement at 1, ¶ D.  Mar-Cone claims

Mangan's alleged violations as of the date of the Second Amended Complaint

amounted to at least $17 million in lost profits, customers and good will.  Second

Amended Complaint ¶ 55.

Based on his position as a minority non-voting shareholder of APW Holding,

Mangan maintains Mar-Cone's Third Claim fails to state a claim in that the sale of his

APW Holding shares to Mar-Cone APW LLC was involuntary, rendering the Mohawk

Doctrine inapplicable to this transaction.  Mangan Affidavit II ¶¶ 3-4; ¶ 11 ("the sale of

APW's assets was involuntary on my part"), ¶ 13 ("[the sale of APW] was not a

voluntary decision on my part"), ¶ 14 ("involuntary sale [of good will] forced upon

---

[16]  Application of the Mohawk Doctrine to Mangan is relevant because while Mangan's non-compete obligation under the Revised Employment Agreement expires after one year of his without cause termination, the restrictions on the ability of a seller of business good will to do so under the Mohawk Doctrine are permanent.  *See Bessemer Trust Company, N.A.,* 618 F.3d at 80 (Mohawk Doctrine "prohibits, in perpetuity, a voluntary seller of a client's good will from improperly soliciting business from that client after client's business, including its good will, is transferred to the purchasers."); *Mohawk Maintenance Co.,* 419 N.E.2d at 329 (purchaser's expectation of seller's duty to refrain from solicitation of former customers is of "indefinite duration"); *Borne Chem. Co., Inc. v. Dictrow,* 445 N.Y.S.2d 406, 413 (2d Dep't. 1981) ("seller [of business good will] will <u>permanently</u> refrain from soliciting his prior customers.") (underlining added).

minority shareholder does not impose duty on that shareholder to refrain from soliciting former customers of selling company).

3.     **Mangan's Indemnification Claim.**

In the Third-Party Complaint, Mangan asserts liability against Third-Party Defendants based on indemnity and contribution in the event Mangan should be found liable to Mar-Cone under its Third Claim alleging Mangan's liability to Plaintiff under the Mohawk Doctrine. Third Party Complaint ¶¶ 40, 46.  However, as Mangan has, subsequent to Third-Party Defendants' motion, withdrawn his claim based on indemnification, Gillen Affidavit ¶ 4 ("Mangan concedes that he does not have a claim for indemnification"), the court's consideration of Third-Party Defendants' motion is limited to Mangan's First and Second Claims based on contribution alone.

4.     **Choice of Law Applicable to Mangan's Contribution Claims**.

Mangan maintains that New York law applies to whether Mangan's Contribution Claims, as pleaded, are viable.  Third-Party Plaintiff's Memorandum at 4-5; Gillen Affidavit ¶ 5(1)-(2).  Specifically, Mangan contends his contribution claims against Giardino and Greenberger are predicated on New York law, specifically N.Y.C.P.L.R. § 1401 ("§ 1401"), as required under New York choice of law rules.  Third-Party Plaintiff's Memorandum at 5 (citing *O'Brien v. Marriott Int'l, Inc.*, 2006 WL 1806567, at **2-3 (E.D.N.Y. June 29, 2006) (claim for contribution is a "loss allocating rule requiring application of forum law").  Third-Party Defendants contend that under either New York or Delaware law, which Third-Party Defendants argue is applicable based on the fact that APW Holding is a Delaware corporation, Mangan may not maintain contribution claims against them as both state's contribution law requires a third-party defendant

must be shown to have breached a legally cognizable duty owed to plaintiff in the main underlying action and Mangan has failed to allege either Giardino or Greenberger owed or breached any such duty to Mar-Cone.  Third-Party Defendants' Memorandum at 13 (citing New York and Delaware caselaw).  In addition to his reliance upon New York's Business Corporation Law, Third-Party Complaint ¶¶ 32-33; 37, Mangan also asserts, in opposition to Third-Party Defendants' motion, Third-Party Defendants' breach of fiduciary corporate duties owed to him as a minority shareholder of APW Holding arise under Delaware law.  Gillen Affidavit ¶ 5(3).  Further, Third-Party Defendants contend that Mangan does not contest that under Delaware law Mangan cannot assert any contribution claims against Third-Party Defendants as Mangan has failed to allege that Third-Party Defendants violated the same legal duty, *i.e.*, in violation of the Mohawk Doctrine, to Mar-Cone alleged by Mar-Cone against Mangan as required by Delaware law.  Third-Party Defendants' Reply at 3 n.1 (citing Delaware law and cases).

Under Delaware law, contribution is limited to cases where the underlying action asserts claims based on the same liability against a defendant as well as the contributing party.  *See Walker v. Patterson,* 325 F.Supp. 1024, 1026 (D.Del. 1971) (no contribution in absence of a "common liability to injured person and unless injured person has possible remedy against two or more persons." (citing *Lutz v. Boltz*, 100 A.2d 647, 648 (Del. Super. 1953) (construing Delaware's Uniform Contribution of Tortfeasors Act, Del. Code Ann. tit. 10, §§ 6301-6308 (1953))).  New York, by contrast, permits contribution where a contributing party's breach of duty to a defendant differs from the duty asserted by the plaintiff against the defendant.  *Raquet v. Braun*, 681 N.E.2d 404, 407 (N.Y. 1997) (citations and internal quotation marks omitted).  It is "well-

established" New York law that "a defendant may seek contribution from a third party even if the injured plaintiff has no direct right of recovery against that party" provided "there has been a breach of duty that runs from the contributor to the defendant who has been held liable" and that this breach "had a part in causing or augmenting the injury for which contribution is sought." *Id.* Therefore, based on Mangan's allegations, Third-Party Complaint ¶ 4, alleging that Mar-Cone has asserted a violation of the Mohawk Doctrine against Mangan, whether contribution may be sought against Giardino and Greenberger depends on whether they may be required to contribute to Mangan's potential liability to Mar-Cone based on a breach of duty owed by them to Mangan which differs from that asserted by Mar-Cone against Mangan, Mar-Cone's Mohawk Doctrine Claim, a possibility available under New York law but not Delaware. This difference results from the more expansive approach to permitting contribution claims in New York without regard to whether a plaintiff has chosen to sue a potential defendant or whether plaintiff's action against such putative third-party may be barred by substantive or procedural rules. *See Raquet*, 681 N.E.2d at 407 (third parties "insulated from liability" based on "lack of duty," and "procedural bars and special defenses," not exempt from potential contribution claim); *Garrett v. Holiday Inns, Inc.*, 447 N.E.2d 717, 719, 720 (N.Y. 1983) (contribution may lie against third party despite plaintiff's failure to join third-party as a defendant) (citing *Klinger v. Dudley*, 361 N.E.2d 974, 980 (N.Y. 1977)). *See also Dole v. Dow Chem. Co.*, 282 N.E.2d 288 (N.Y. 1972) (chemical manufacturer permitted to implead employer despite workers compensation bar preventing plaintiff's action against employer). Thus, New York courts "recognize[ ] that contribution rules have developed to remedy an injustice to joint <u>tort-feasors</u>, who

were permitted no general apportionment rights under prior law." *Garrett,* 447 N.E.2d at 719 (citing *Klinger*, 361 N.E. 2d at 980) (underlining added).   Accordingly, as the outcome of Third-Party Defendants' motion – contribution or no contribution – depends on whether New York or Delaware law applies to the requirements for Mangan's Contribution Claims as alleged in the Third-Party Complaint, an actual conflict exists and the court is required to determine whether New York or Delaware contribution rules apply to the viability of the Third-Party Complaint.  Third-Party Defendants' Reply at 3-7 (contending that New York law precludes Mangan's Contribution Claims).

In a diversity action such as the instant case, contribution rules are considered substantive in nature requiring the court to apply forum conflicts of law rules to decide which competing jurisdiction's contribution rules should apply.  *See White v. ABCO Engineering Corp.,* 221 F.3d 293, 307 (2d Cir. 2000) (state contribution law considered substantive in diversity cases (citing *Overseas Nat'l Airways, Inc. v. United States*, 766 F.2d 97, 100-02 (2d Cir. 1985) (FTCA requires application of state contribution law to contribution claim against United States))).  *See also Steinberg v. Sherman,* 2008 WL 2156726, at *6 (S.D.N.Y. May 8, 2008) (§1401 applies to contribution rights for state claims based on diversity jurisdiction); *Comer v. Titan Tool, Inc.*, 888 F.Supp. 605, 608-09 (S.D.N.Y. 1995) (contribution rules in diversity action are substantive and require application of forum law including choice-of-law rules – applying New York law based on decedent's prior contacts with New York); *Mascarella v. Brown*, 813 F.Supp. 1015, 1018-19 (S.D.N.Y. 1993) (in diversity action court applies New York contribution rules based on New York domicile of third-party plaintiff and New York as situs of negligence) (Sotomayor, J.).  Thus, because state substantive law governs Mangan's claim for

21

contribution, *ABCO Engineering Corp.*, 221 F.3d at 307, New York conflicts of law principles are used to determine whether New York or Delaware law applies.

Under New York choice of law rules, when a conflict concerns a loss-allocating rule, including a claim for contribution or indemnification, the court applies the three-part interest analysis rule established in *Neumeier v. Kuehner*, 286 N.E.2d 454, 457-58 (N.Y. 1972) (applying Ontario guest statute), to determine the state with the greatest interest or concern with the specific issues raised in the litigation.  *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005).  Generally, under New York's choice of law rules, the law of the state in which the wrong occurs applies to issues of substantive law.  *Cooney v. Osgood Machinery, Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993).  In the instant case, all of the alleged wrongs alleged against Giardino and Greenberger by Mangan occurred in New York.[17]  Rules regarding the allocation of losses, however, require consideration of other factors including, most relevantly, the domicile of the parties.  *Id.* at 281.  The first of the three rules established under *Neumeier* provides that if the parties share a domicile, the loss-allocation rule of that shared domicile applies.  *Neumeier*, 286 N.E.2d at 457-58 (accident in Ontario involving Ontario plaintiff domiciliary and defendant domiciled in New York); *Mascarella*, 83

---

[17]  Although the present record is limited on this issue, given that, as pleaded in the Second Amended Complaint ¶¶ 21 (Servall opened "call center in the Buffalo area"); 25 (Mangan "joined Servall as . . . Executive President" to "oversee[]" "on-going solicitation of former customers of APW"), Mangan, after the sale of APW to Mar-Cone, apparently engaged in business on behalf of Servall in this district, the court assumes, for the purposes of evaluating the choice of law issue and the sufficiency of Mangan's contribution claims, that most, if not all, of Mangan's alleged unlawful solicitations, by telephone or other communications, occurred in New York although some may have occurred in New Jersey and other states comprising APW's former sales territory.

F.Supp. at 1018-19 (New York domicile of third-party and situs of tort controlling).

Here, because it is undisputed that  Mangan and Third-Party Defendants all are

residents and domiciliaries of New York and the alleged wrongs by Giardino and

Greenberger supporting Mangan's Contribution Claims took place in New York, Third-

Party Complaint ¶¶ 7, 10-11, the court applies New York law to the question of whether

Mangan's Contribution Claims are maintainable under § 1401.[18]

   Mangan's First Claim alleges Mangan's right to contribution based on Third-Party

Defendants' breach of Mangan's right as a minority non-voting shareholder under the

New York's Business Corporation Law to be given a factually correct and prior notice of

a sale of the assets of APW Holding by Third-Party Defendants as majority

shareholders.  Third-Party Complaint ¶¶ 31-33.  According to Mangan, Greenberger

also misrepresented to Mangan that the sale of APW Holding and APW was to be a

"stock sale" and that had Greenberger correctly advised Mangan that the sale of APW

Holding was to be an asset sale, Mangan "would have had the right to terminate his

employment and <u>obtain a fair price for his shares from APW and/or the majority</u>

<u>shareholders</u> [Third-Party Defendants as majority shareholders of APW Holdings]."  *Id.*

¶ 36 (underlining added).  As such, Mangan asserts he would not thereby have become

a seller of his minority ownership interest in APW to Mar-Cone and thus would not have

been subject to the Mohawk Doctrine applicable to such a selling shareholder or owner

---

[18]   Although Mangan alleges a breach of fiduciary duty under the New York Business Corporation
Law by Third-Party Defendants in support of Mangan's First Claim, Third Party Complaint ¶¶ 32-33; 37-38,
Mangan also asserts, inconsistently, a violation of Delaware corporation law in support of this claim. Gillen
Affidavit ¶ 4, 5(3); Third-Party Plaintiff's Memorandum at 4 (Delaware law applies to the "substantive
allegations" of Mangan's First Claim.).  Accordingly, because there is an apparent ambivalence as to
which state's substantive law on this claim Mangan intends to rely, the court considers both New York and
Delaware law in addressing this issue.

of APW. *Id.*; Third-Party Plaintiff's Memorandum at 7. Mangan also alleges that Third-Party Defendants' failure to correctly inform Mangan of the asset nature of the APW sale prevented him from filing an "objection" or "notice of dissent" to the sale and electing to have his shares "repurchased by APW" or "the majority shareholders," Giardino and Greenberger, at "fair value" thereby avoiding any permanent obligations not to solicit APW customers following the sale of APW to Mar-Cone and his later employment by Servall. Third-Party Complaint ¶ ¶ 37-38. Based on these alleged breaches of corporate fiduciary duties owed to Mangan by Third-Party Defendants, Mangan asserts he is entitled to contribution from Third-Party Defendants in proportion to the amount of damages found to be suffered by Mar-Cone as a result of Mangan's violation of the Mohawk Doctrine under Mar-Cone's Third Claim. *Id.* ¶¶ 38-40.

Before addressing the merits of Mangan's First Claim based on Third-Party Defendants' alleged breach of fiduciary duty applicable to majority shareholders such as Giardino and Greenberger, the court considers whether New York or Delaware law applies to this issue. Third-Party Defendants argue that as APW Holding is a Delaware corporation, New York's choice of law rules require that Delaware law applies to questions of internal corporate affairs, such as the fiduciary duties of majority shareholders like Giardino and Greenberger and protections afforded a minority shareholder like Mangan. Third-Party Defendants' Memorandum at 12 n. 3 (citing *Walton v. Morgan Stanley & Co., Inc.*, 623 F.2d 796, 798 n. 3 (2d Cir. 1980) (New York law requires the law "of state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation.")). In New York, "[t]he primary source of the law [pertaining to a stockholder's derivative action] remains that of the state which created

the corporation." *Diamond v. Oreamuno*, 248 N.E.2d 910, 915 (N.Y. 1969).  The court therefore applies Delaware law to Mangan's First Claim regarding the extent of Mangan's alleged rights to notice and repurchase of his APW Holding shares and any ownership in APW represented by such shares.  However, as the court finds little substantive difference between New York and Delaware law on this issue, and as Mangan appears to rely primarily on New York law, Third-Party Complaint ¶ ¶ 32, 37, but secondarily on Delaware law, Gillen Affidavit ¶ ¶ 4, 5.3, the court discusses the merits of Mangan's First Claim, based on a breach of fiduciary duty owed by Giardino and Greenberger to Mangan, under both New York and Delaware law.[19]

Regarding Mangan's Second Claim alleging that Greenberger misrepresented the correct nature – stock or asset – of the APW sale to Mar-Cone, Mangan contends that New York law applies to this issue.  Third-Party Plaintiff's Memorandum at 4-5 (citing *Robinson v. Avis Rent-A-Car, Inc.*, 1999 WL 342037, at *3 (E.D.N.Y. May 24, 1999) (New York choice of law requires application of the law of place of injury, not place where misrepresentation or fraud occurred)).  Third-Party Defendants do not specifically respond to this argument; rather, Third-Party Defendants assert only that Mangan has abandoned any claim to contribution under Delaware law.  Third-Party Defendants' Reply at 3 n. 1.  New York courts hold that a cause of action for tort accrues where its economic impact is felt, which generally is the plaintiff's residence.

---

[19]  Mangan also states, confusingly, that notwithstanding that Third-Party Defendants' assertion that Delaware law applies to Mangan's First Claim "may be true," New York law applies to Mangan's Second Claim.  Third-Party Plaintiff's at 4 (underlining added).  This apparent concession also implies that while the Third-Party Complaint refers to APW, the corporate entity actually intended by Mangan as the basis for the fiduciary duties asserted by Mangan is APW Holding.  APW's state of incorporation is not provided in the record.

*Ceres Partners v. GEL Associates*, 918 F.2d 349, 353 (2d Cir. 1990) (citing *Sack v.*

*Low*, 478 F.2d 360, 366 (2d Cir. 1973) (citing *Myers v. Dunlop Tire & Rubber Corp.*, 335

N.Y.S.2d 961 (1st Dep't. 1972))).  In any event, based on the pleadings it is apparent

that Greenberger's alleged misrepresentations to Mangan took place in New York.

Third-Party Complaint ¶ 42.  Further, as New York contribution law applies, whether the

misrepresentations are tortious requires the application of New York law as well.

Accordingly, the court applies New York law to Mangan's Second Claim based on the

alleged misrepresentation by Greenberger.

5.     **Standards Governing Third-Party Defendants' Motion.**

Third-Party Defendants move to dismiss Mangan's contribution claims pursuant

to Fed.R.Civ.P. 12(b)(1) – lack of jurisdiction, 12(b)(6) – failure to state a claim, and

12(c) – judgment on the pleadings.  As the court finds that supplemental jurisdiction

pursuant to 28 U.S.C. § 1367(a) is available to support subject matter jurisdiction over

Mangan's Contribution Claims, Discussion, *supra*, at 9-16, and as Third-Party

Defendants proffer no arguments that Third-Party Defendants are entitled to judgment

on the pleadings, the court considers Third-Party Defendants' motion pursuant only to

Fed.R.Civ.P 12(b)(6).

The same analysis applicable to a Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") motion

to dismiss applies to a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings.

*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  In particular, "'[o]n a motion to

dismiss or for judgment on the pleadings, [the court] must accept all allegations in the

complaint as true and draw all inferences in the non-moving party's favor.'"  *LaFaro v.*

*New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller*

*v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (bracketed material added and additional quotation omitted)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Second Circuit has made clear that "for the purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6), 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).  "'Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'"  *Id.*  "Furthermore, 'the harm to the plaintiff when a court considers material extrinsic to a complaint [on a Rule 12(b)(6) motion to dismiss] is the lack of notice that the material may be considered.'"  *Id.*  As such, "'where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6)

motion into one under Rule 56 is largely dissipated.'" *Id.*

Here, although Third-Party Defendants include in their motion papers various documents, including, *inter alia*, the Non-Disclosure Agreement, the Subscription Agreement, the Stockholders' Agreement, and the Revised Employment Agreement, all such documents are either incorporated by reference into, or attached as exhibits to the Third-Party Complaint.  *See* Third-Party Complaint (Doc. No. 105), ¶ 12 (certificate of merger); ¶¶ 19, 24-25, 35 (Revised Employment Agreement); ¶¶ 21-23 (Stock Subscription Agreement and Stockholders' Agreement"); and Third-Party Complaint, Exh. A (Second Amended Complaint referencing the Revised Employment Agreement ¶ 34) and the Non-Disclosure Agreement ¶ ¶ 16, 43-44), and Exh. B (Answer to Second Amended Complaint, with Defenses, Counterclaims.  Accordingly, Mangan, by incorporating by reference or attaching such documents to the Third-Party Complaint, has established Mangan had actual notice of such documents, upon which Mangan has relied in framing the Third-Party Complaint, thus dissipating the need to convert the instant motion to dismiss into one for summary judgment before the court can rely on such documents.  *Mangiafico*, 471 F.3d at 398 (citing *Chambers*, 282 F.3d at 152-53).[20] The court therefore turns to the question of the viability of Mangan's Contribution Claims under applicable New York and Delaware law.

---

[20]  Mangan also submits copies of several emails between himself and Greenberger in connection with and prior to the APW sale which Mangan claims demonstrates the falsity of Greenberger's representations.  Mangan Affidavit Exhs. C and D.

6.      **Mangan's First Claim Seeking Contribution Based on Third-Party
        Defendants' Alleged Breach of Fiduciary Duties Owed Mangan as a
        Minority Shareholder**.

Because, as discussed, Discussion, *infra*, at 29-30, §1401 is limited to providing

apportionment of damages among contributing tort-feasors in relation to an action

brought by a plaintiff against a defendant based on defendant's commission of a tort, if

Mar-Cone's Mohawk Doctrine claim does not arise in tort, §1401 contribution is

inapplicable.   Moreover, although New York recognizes possible contribution based on

a breach of duty owed to a defendant different from that alleged by plaintiff against the

defendant, because contribution under §1401 is limited to joint, successor and other

tort-feasors, unless the differing duty asserted in support of contribution also is tortious

in nature, so as to render the third-party defendant a tortfeasor, such asserted duty will

similarly render §1401 unavailable.   The court thus examines whether Mar-Cone's

Mohawk Doctrine Claim is based on tort and whether each fiduciary duty Mangan

alleges was violated by Giardino and Greenberger are, or are not, also tortious in

nature.

Under New York law, contribution pursuant to § 1401 may be sought against

concurrent, successive, independent, alternative and even intentional tort feasors,

*Raquet,* 681 N.E.2d at 407, provided that the contributing party is shown to have

breached a duty to the defendant which caused or increased plaintiff's injury.  *Id.*

"Generally, apportionment [contribution] rights among wrongdoers arise when 'two or

more tort-feasors share in responsibility for an injury, in violation of duties they

respectively owed to the injured person.'" *Garrett,* 447 N.E.2d at 719 (underlining

added) (quoting *Smith v. Sapienza*, 417 N.E.2d 530, 532 (N.Y. 1981), and citing

*Holodock v. Spencer,* 324 N.E.2d 338, (N.Y. 1974)), and *Rogers v. Dorchester Assoc.*, 300 N.E.2d 403 (N.Y. 1973))) .  Although New York law bars contribution for purely economic losses based on a breach of contract, *Sommer v. Federal Signal Corporation*, 593 N.E.2d 1365, 1369 (N.Y. 1992); *Sargent,* 517 N.E.2d at 1364, where the contributing party is alleged to have negligently performed a contract based on a duty arising from a contract of "public policy," such tortious misconduct will suffice to support a contribution claim pursuant to § 1401.  *Sommer*, 593 N.E.2d at 1370-71.  Contribution therefore may be sought where the underlying action "sounds both in contract and tort." *Stratagem Development Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 551 (S.D.N.Y. 1994) (citing *Sommer*, 593 N.E.2d at 1373).

New York also recognizes contribution will lie "in favor of tort-feasors against third parties as to whom plaintiffs had no direct right of recovery due either to their failure to join the third parties as defendants or to some special defense barring recovery."  *Garrett*, 447 N.E.2d. at 719 (citing *Klinger,* 361 N.E.2d at 979-80).  For example, in *Garrett,* despite plaintiffs' inability to allege a cognizable duty against the municipal third-party defendant under relevant New York law, the court sustained defendants' contribution claims against the municipal defendant finding it owed a special duty to defendants the breach of which contributed to plaintiffs' personal and property injuries as "joint tort feasors."  *Garrett,* 447 N.E.2d at 779-80.  In *Garrett*, the court found such a duty to exist based on the defendant municipality's alleged failure to use reasonable care, or negligence, in issuing a certificate of occupancy upon the competition of the hotel premises and negligently approving construction alterations to "ensure the premises were not in blatant violation of fire and safety laws," *Garrett*, 447

30

N.E.2d at 721, duties of a classically tortious nature, specifically, negligence.
Therefore, in order for a contribution claim to arise under § 1401, the claim must be
alleged by one tort feasor against another based on a breach of duty of a tortious
nature owed either to the plaintiff by the contributing third party or a special duty of a
tortious nature owed by the third party to the defendant seeking contribution or both.  At
the threshold, the court therefore addresses whether Mar-Cone's Mohawk Doctrine
claim in the underlying action alleges a tort for if a Mohawk Doctrine violation is, as a
matter of New York law, one solely for economic losses based on breach of contract,
neither Mangan, Giardino nor Greenberger could be joint tort-feasors and thus no
contribution claim as asserted by Mangan may arise under §1401.  *Raquet*, 681 N.E.2d
at 407; *Sargent*, 517 N.E.2d at 1364; *Garrett*, 447 N.E.2d at 719.  Thus, whether
Mangan's Contribution Claims seeking contribution for damage based on his violation of
the Mohawk Doctrine fail at the outset turns on whether a violation of the Mohawk
Doctrine states a claim under New York law involving misconduct constituting a tort or
one seeking economic losses solely from a breach of contract, or both, *i.e.*, for a
tortious, *e.g.*, negligent, breach of contract.  *See Stratagem Development Corp*. 153
F.R.D. at 551; *Sommer*, 593 N.E.2d at 1373 .

"Under New York common law, a seller has an 'implied covenant' or 'duty to
refrain from soliciting former customers, which arises upon the sale of the 'good will' of
an established business.'" *Bessemer Trust Co.,* 949 N.E.2d at 468 (quoting *Mohawk*,
419 N.E. 2d at 329-30)).  Such implied covenant is required in order to prevent the
seller from committing a "'fraud on the contract [of sale]'" that would arise were a seller
allowed to divert customer good will, or expected sales from existing customers and

that would otherwise accrue to the purchaser.  *Bessemer Trust Co.,* 949 N.E.2d at 468 (quoting *Von Bremen*, 93 N.E. at 189 (quoting *Trego v. Hunt*, [1896] AC 7)).  New York courts recognize that such violation of the implied covenant not to interfere with the purchaser's expectation of future business from established customers of the business "sounds in breach of an implied covenant of the contract of sale that the seller will permanently refrain from soliciting his prior customers."  *Borne Chem. Co., Inc.*, 445 N.Y.S.2d 406 at 413.

In *Mohawk*, the New York Court of Appeals stated that ". . . it may be somewhat misleading to describe the duty of the seller [of a business's good will] to refrain from soliciting his former customers as one emanating from 'an implied covenant,' since the duty is, in reality, <u>one imposed by law</u>, in order to prevent the seller from taking back that which he has purported to sell."  *Mohawk,* 419 N.E.2d at 329 (underlining added). Subsequent to its discussion in *Mohawk*, in *Hyde Park Prods. Corp. v. Maximilian Lerner Corporation*, 480 N.E.2d 1084 (N.Y. 1985), a case involving the defendant's alleged failure to refrain from competing with plaintiff and soliciting former customers after the sale of defendant's peat moss business to plaintiff, the New York Court of Appeals noted that plaintiff asserted several "business torts" based on, *inter alia*, defendant's "recapturing the 'good will'" of the peat moss business transferred to plaintiff "upon the sale of defendant's interest in the business," in violation of the Mohawk Doctrine.  *Hyde Park Prods. Corp.*, 480 N.E.2d at 1086.  In sustaining the finding of liability but remanding for a reconsideration of damages, the court in *Hyde Park* emphasized that "the law imposes upon the seller 'a specific duty to refrain from soliciting his former customers after he has sold his business and the accompanying

'good will' for another.'" *Id.* (quoting *Mohawk*, 419 N.E.2d at 329).  The court also noted

that an action for "wrongful diversion of goodwill previously sold to a plaintiff by a

defendant is sometimes characterized as one to recover for a breach of an implied

covenant of the contract of sale that the seller will permanently refrain from soliciting his

prior customers.  *Id.* (citing *Borne Chem. Co.*, 445 N.Y.S.2d at 413).  However, in *Hyde*

*Park,* the court reiterated observation in *Mohawk* that such emphasis on an implied

covenant of sale as the basis for the restriction on solicitation was "'misleading'"

because the duty to refrain from such attempted retrieval of the seller's customers is

"'one imposed by law.'" *Id.* (quoting *Mohawk*, 419 N.E.2d at 329).

Additionally, in certifying questions to the New York Court of Appeals on how a

court should assess post-sale conduct by a seller of an investment services business

interest as prohibited solicitations within the scope of the Mohawk Doctrine, the Second

Circuit, as noted, Discussion, *supra*, at 14, recently stated that "[t]he principal legal

question before us depends not on interpretation of contract law, but an application of a

branch of New York tort law, the Mohawk Doctrine."  *Bessemer Trust Company,* 618

F.3d at 80.  Significantly, in responding to the questions certified by the Second Circuit,

nowhere in its decision did the New York Court of Appeals indicate any disagreement

with the Second Circuit's classification of a Mohawk Doctrine claim as one based on

tort, not contract.  *See Bessemer Trust Company, N.A. v . Branin,* 949 N.E.2d 462 (N.Y.

2011) (*passim*).

Given the consistent recognition by the New York Court of Appeals that a seller's

duty to refrain from any solicitation of present customers following the sale of a

business arises from one imposed by law, *Mohawk*, 419 N.E.2d at 329; *Hyde Park*

*Prods. Corp.*, 480 N.E.2d at 1086, as an incident of the contract of sale constituting an

impairment or diversion of the good will transferred by the seller, and the very recent

and explicit acknowledgment of this legal classification by the Second Circuit that the

Mohawk Doctrine is a species of New York tort law, the court finds that Mar-Cone's

Third Claim states a claim sounding in tort and arising from Mangan's intentional

misconduct in violation of the duty implied by law incident to the sale of APW including

its good will.  As such, Mangan's status as an alleged tort-feasor under New York law

satisfies a fundamental prerequisite to seeking contribution pursuant to § 1401.

Nevertheless, in order for contribution to lie against a third party, § 1401

additionally requires, as relevant to this case, that alleged tortfeasors also be "subject to

liability for damages for the same . . . injury to property." N.Y.C.P.L.R. § 1401.[21]  Thus,

the court must consider whether Mangan's diversion of APW's customer good will,

including reasonably expected future sales, as alleged by Mar-Cone to be its damages

based on Mangan's violation of the  Mohawk Doctrine, constitutes a sufficient allegation

of an "injury to property" under § 1401.  Third-Party Defendants argue that Mangan's

Contribution Claims are barred under § 1401 as such claims seek contribution not for

property damage as those terms are used in §1401, but for Mar-Cone's economic loss

damages alleged under its Third Claim which is based on Mangan's breach of contract

or implied covenant with Mar-Cone related to the asset sale of APW.  Third-Party

---

[21] Section 1401 also permits contribution in actions alleging personal injury and wrongful death
claim not applicable to this case.  N.Y.C.P.L.R. § 1402 limits contribution to a contributing party's
"equitable share of any judgment recovered by the injured party," based on the "relative culpability" of the
contributing party; § 1403 allows a cause of action for contribution to be asserted by way of separate
action, cross-claim, counterclaim or a third-party claim in a pending action; § 1404 protects against loss of
an injured party's right to damages and preserves a party's right to seek indemnification or subrogation.

Defendants' Reply at 7 (citing *Board of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 517 N.E. 2d 1360, 1364 (N.Y. 1987)) ("*Sargent*"). Further, Third-Party Defendants also maintain, without citation to authority, that Mar-Cone's alleged economic loss from Mangan's solicitations of APW's former customers does not constitute an "injury to property" under §1401, thus foreclosing any contribution claims against Third-Party Defendants. *Id.* Thus, contribution lies against Third-Party Defendants only if Mar-Cone's claim is one for an "injury to property" within the meaning of that term as it is used in §1401.

"Goodwill is a valuable property right derived from a business's reputation for quality and service." *Levitt Corporation v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979) (affirming grant of injunctive relief against seller's infringement of trademark which included seller's well-known name in housing construction market (citing *Hanover Star Miller Co. v. Metcalf,* 240 U.S. 403, 412-13 (1916); and *Clairol, Inc. v. Asaro*, 1975 Trade Cas. P 60,350 at 66,473 (E.D. Mich. 1975))). Good will includes a purchaser's "right to expect that the firm's established customers will continue to patronize the business" sold by the seller. *Mohawk*, 419 N.E.2d at 329 (affirming grant of trial on claim for money damages and permanent injunction for diversion of customer's goodwill following sale of business (citing *People ex rel. Johnson Co. v. Roberts*, 53 N.E. 685, 688-89 (N.Y. 1899); *Churton v. Douglas*, Johns Eng Ch, p. 174; and *Cruttwell v. Lye*, 17 Ves, Jr. 335, 346)).

New York law has long determined that business good will in the form of continued customer patronage is a valuable and transferrable property right entitling the transferee to both equitable and compensatory remedies for its protection. *Mohawk,*

419 N.E.2d at 329 (citing and quoting *Von Bremen*, 93 N.E. at 188 (citing authorities)).

*See also In re Brown*, 150 N.E. 581, 582 (N.Y. 1926) (recognizing actually acquired

good will is a valuable property interest transferrable and protectable by law as a

business asset) (Cardozo, J.); *Boon v. Moss,* 1877 WL 12057, 70 N.Y. 465, 474 (1877)

(recognizing subscribers of newspapers constituted incorporeal property within scope of

seller's agreement not to compete as a condition of sale of business); 62 N.Y. Jur. 2d

Good Will § 2 ("The good will of a business is . . .  a species of intangible property

which is a valuable asset of the business of which it is a constituent part."); § 14 ("good

will of a business is a species of property which may be transferred, leased, or

mortgaged."); § 20 ("compensatory damages may be recovered for injury to the good

will of a business."). *Cf. Jay N Jen, Inc. v. Polge Seafood Distributing, Inc.*, 894

N.Y.S.2d 296, 298 (4th Dep't. 2010) (asset purchaser of good will not entitled to

damages for failure to demonstrate reduced sales to solicited customers or opportunity

for future sales lost as result of distributor's solicitations).  As New York law protects

good will, a business asset, against wrongful impairment as an injury to a form of

property, *Mohawk*, 419 N.E.2d at 319; *Von Bremen,* 93 N.E. at 188, the court finds

such good will constitutes property subject to injury within the scope of § 1401.  As

such, the Mohawk Doctrine Claim, a business tort under New York law, asserted by

Mar-Cone against Mangan permits impleader under § 1401 or a third party share in an

award of damages "for . . . [an] . . . injury to property," as required by §1401.

Moreover, although Third-Party Defendants argue that Mar-Cone's damages

caused by Mangan's Mohawk Doctrine violations do not constitute property damage

under §1401, Third-Party Defendants' Reply at 7, Third-Party Defendants cite to no

authority for this proposition and the court's research reveals none.  Third-Party

Defendants' reliance on *Sargent,* holding that "purely economic losses," *Sargent,* 517

N.E.2d at 1363, do not represent an "injury to property" as that term appears in § 1401

and as such do not support Mangan's Contribution Claims, Third-Party Defendants'

Reply at 7, is also misplaced.  Inasmuch as in *Sargent,* the building project's architect's

attempt to seek impleader from the project's general contractor based on plaintiff's

damage claim arising from a defective and leaky roof alleging breach of contract

against both parties was precluded as one not arising from tortious conduct, whether an

impairment, upon any legal basis, of business good will, a threshold issue in the present

case, by a seller constituted an "injury to property" under §1401 caused by tortious

conduct was not addressed by the court.  Accordingly, Mangan's Contribution Claims

against Giardino and Greenberger satisfy this element of §1401 based on a violation of

Mar-Cone's right under the Mohawk Doctrine to obtain relief arising from Mangan's

alleged wrongful impairment of the APW good will asset acquired by Mar-Cone.  Thus,

had Mar-Cone accused Giardino and Greenberger as well as Mangan of violating its

Mohawk Doctrine rights in the Second Amended Complaint, there would be no question

that Mangan could have sought contribution against them pursuant to §1401.  However,

because this factor is not present, the court turns to the question of whether Mangan's

Contribution Claims satisfy the other conditions necessary for a valid contribution claim

under § 1401 in this case, namely, whether Mangan has plausibly alleged any breach of

different duty of a tortious nature owed to him by Giardino and Greenberger which,

along with Mangan's own Mohawk Doctrine violations, may be found to have

contributed to Mar-Cone's damages to its acquired APW good will as a form of property

under New York law.

As discussed, Discussion, *supra*, at 37, if Third-Party Defendants, in addition to Mangan, had been alleged by Mar-Cone to have also violated Mar-Cone's rights to exploit APW's good will as protected by the Mohawk Doctrine, Mangan could have asserted contribution against Giardino and Greenberger as joint tort feasors along with Mangan.  However, as the Third-Party Complaint indicates, Mar-Cone has not asserted any claim against Giardino and Greenberger based on the Mohawk Doctrine, or any other tortious conduct, presumably because Mar-Cone views them as (and, in fact, they are) blameless of the wrongful customer solicitations Mar-Cone asserts against Mangan.  Nevertheless, Mangan's ability to seek contribution against Giardino and Greenberger based on Mangan's violation of his duty to Mar-Cone under the Mohawk Doctrine may be established under § 1401 if Mangan has adequately alleged that Giardino and Greenberger owed Mangan any special duty, one also sounding in tort, the breach of which, if established, as a prerequisite to a §1401 contribution claim, would render Mangan, Giardino and Greenberger as joint tort feasors, or subsequent tort feasors, and contributors to Mar-Cone's damages.  *See Garrett*, 447 N.E.2d at 720 (failure of plaintiff to join third-party defendant does not bar defendants' request for contribution based on allegation of special duty of a tortious nature owed defendants by contributing party which is alleged to have contributed to plaintiff's injury and damages). Mangan relies on this principle of New York law as the predicate for his First Claim contending that Giardino and Greenberger's violations of fiduciary duties imposed on majority shareholders under New York corporation law sufficiently alleges a breach of duty owed Mangan capable of supporting Mangan's First Claim for contribution.  Third-

Party Plaintiff's Memorandum at 6 (citing and quoting *Garrett, Raquet* and *Sommer*).

According to the Third-Party Complaint, Mangan, as a non-voting minority shareholder, was entitled under the New York Business Corporation Law to be given notice of any vote by majority shareholders, Giardino and Greenberger, of APW Holding to sell the assets of the corporation and Giardino and Greenberger "had a fiduciary duty to Mangan to disclose that a sale of substantially all of the assets of APW was being considered [in the fall of 2009 by Giardino and Greenberger]."  Third-Party Complaint ¶ ¶ 22-23; 27, 31-33.  Mangan further alleges that prior to the sale Greenberger falsely informed Mangan that the expected sale was to be a stock sale, *id.* ¶ 34, and that had Mangan received timely notification of the asset sale as "required by the New York Business Corporation Law," Mangan could have terminated his employment with APW, filed an objection or notice of dissent, and "elected to have his shares repurchased by APW and/or the majority shareholders at fair value" thereby avoiding his potential liability to Mar-Cone under the Mohawk Doctrine.  *Id.* ¶ 36-37. Mangan concludes that Giardino and Greenberger, by their alleged "willful concealment" of the fact of the asset nature of the APW sale and not a stock sale as Mangan claims he had been misled into believing, "breached their fiduciary duties to Mangan," *id.* ¶ 38, thus exposing Mangan to "liability" and "damages" to Mar-Cone under Mar-Cone's Third Claim based on the Mohawk Doctrine in the event Mangan solicited his former APW customers.  *Id.*  Mangan's First Claim fails on its face for several reasons.

First, it is basic that to plausibly allege a cause of action arising under a statute or other legal ground relied upon by a party asserting such claim, here Mangan as the

Third-Party Plaintiff, such claim fails to do so if "as a matter of law" under no arguable construction of the legal ground relied on in the pleading, *i.e.*, the New York Business Corporation Law as Mangan has specifically alleged, does such a claim or other basis for alleged liability exist.  *See, e.g., Pandozy v. Tobey*, 335 Fed.Appx. 89, 91 (2d Cir. 2009) (dismissal of complaint pursuant to Fed.R.Civ.P. 12(b)(6) affirmed where conspiracy to commit harassment alleged under New York law but New York law recognizes no claim for civil harassment).  Although the Third-Party Complaint nowhere particularizes any specific provision within the New York Business Corporation Law supportive of his allegation of a breach of fiduciary duty against Giardino and Greenberger based on the failure of Giardino and Greenberger, as majority shareholders, to correctly inform a minority shareholder, such as Mangan, of the nature of the sale of the corporation's assets, the court's own review of that statute reveals no such provision.  The statute does provide for limited shareholder protection but not in the circumstances alleged by Mangan.

For example, pursuant to Section 910 of New York Business Corporation Law ("N.Y. Bus. Corp. Law"),[22] the shareholder of any domestic corporation who does not assent to the taking of certain actions relating to the corporation including, as relevant to this case, the sale of all or substantially all of the corporation's assets, has a right to receive payment of the fair value of his shares provided the asset sale is "other than a transaction wholly for cash . . .." N.Y.Bus.Corp. Law § 910(a)(1)(B).  However, contrary to Mangan's allegation, Third-Party Complaint ¶ 32, §910 does not provide for any

---

[22]  References to the N.Y. Bus. Corp. Law are to "McKinney 2003."

mandatory notice to a minority non-voting shareholder like Mangan prior to taking such

action.  Additionally, had the putative asset sale of APW at issue in this case been for

other than cash, Mangan could have proceeded under N.Y. Bus. Corp. Law § 623 ("§

623") to enforce his right to receive payment for his shares by filing with the corporation,

APW Holding, prior to the shareholders' meeting at which the proposed sale was

submitted to vote by the majority voting shareholders,[23] written objection to the

proposed sale advising of Mangan's dissent to the planned asset sale, which would

have entitled Mangan to receive fair value for his shares.  N.Y.Bus. Corp. Law § 623.

The Third-Party Complaint, however, fails to allege that even though Mangan did not

receive prior notice of the putative asset sale that the sale was anything "other than a

transaction wholly for cash . . .."  N.Y. Bus. Corp. Law § 623(a).  Indeed, Mangan does

not allege he received less than fair value for his shares representing his ownership in

APW.  As such, even had the majority shareholders, Giardino and Greenberger,

correctly advised Mangan regarding the facts of the putative APW sale to Mar-Cone,

prior to the shareholders' meeting at which the asset sale was submitted to vote by the

voting shareholders of APW Holding or APW, Giardino and Greenberger, that the

contemplated sale was a sale of the corporation's assets, including Mangan's

ownership in APW, rather than its stock, unless the asset sale was other than a cash

transaction, Mangan, regardless of the alleged lack of notice of such contemplated

action, could not have registered his dissent and tendered his shares for repurchase by

APW Holding or its majority shareholders, prior to the asset sale to Mar-Cone, under §

---

[23]  There is no information whether such a meeting was conducted or whether Giardino and
Greenberger, as majority shareholders with exclusive voting rights, proceeded, as is likely, by written
waiver and consent.

623, so as to avoid becoming a seller of APW's goodwill including that of its existing customers, and thus, as a consequence, also have avoided becoming subject to the Mohawk Doctrine following the transaction.  Mangan fails to point to any New York statute or caselaw granting a minority non-voting shareholder like Mangan any repurchase right, or put,[24] for shares in the event of an asset sale of APW Holding and APW absent a provision to such effect in any enforceable shareholders agreement.

A careful review of the Third-Party Complaint and related documents demonstrates the absence of any allegations that such an agreement containing a put, or mandatory buy-back, applicable to Mangan's shares existed.  The only allusion to an agreement regarding Mangan's shares is in paragraph 24 which states that under his employment agreement with APW Mangan was required to "sell his stock to APW." Third-Party Complaint ¶ 24 (underlining added).  Thus, Mangan concedes that instead of a put, the only agreement mentioned in the Third-Party Complaint regarding any potential repurchase of Mangan's stock, whether in APW itself, or as more likely the case based on the allegations in the Third-Party Complaint taken as a whole, APW Holding, in actuality provides a "call"[25] right in favor of APW, assuming Mangan ever received shares in APW, a fact not asserted by Mangan.  Mangan's later allegation relating to this issue, that upon terminating his employment he could "obtain a fair price for his shares from APW and/or the majority shareholders," Third-Party Complaint ¶ 36,

---

[24]  A put option is "a[n] option to sell something (esp[cially] securities] at a fixed price even if the market declines; the right to require another to buy."  *Christopher v. BCA, LLC*, 2008 W L 4951212 at *1, n. 4 (N.D. Ill. Nov. 17, 2008) (quoting Black's Law Dictionary 1121 (7th ed. 1999)).

[25]  A call is "an option to buy something (especially securities) at a fixed price even if the market rises; the right to require another to sell."  Black's Law Dictionary 1204 (9th ed. 2009).

is thus inconsistent with paragraph 24.  As such it is both unduly conclusory and speculative, and thus implausible.  Indeed, Mangan himself recognizes his shares were subject to a drag-along requirement in the Stockholder's Agreement which required minority shares to be sold upon the sale of APW Holding assets or stock.  Mangan Affidavit II ¶ 8 (referring to Stockholders Agreement § 2.5 (Drag Along Rights); § 2.6 (Tag Along Rights); §§ 3.1, 3.2 (defining shareholder participation in sale transaction)).

Further, under New York law, shareholders of a closely held corporation, like APW Holding, may elect to dissolve a corporation based on oppressive conduct, N.Y. Bus. Corp. Law § 1104-1, and enforce a provision in a shareholders agreement calling for a mandatory purchase of their shares based on a stated formula.  *Gallagher v. Lambert,* 549 N.E.2d 136, 137-38 (N.Y. 1989) (buy-back of stock requirement in shareholders agreement for stock in closely-held corporation enforceable).  A fair reading of the Third-Party Complaint shows that Mangan makes no allegation that any relevant shareholders agreement granted him such rights and protections. Significantly, although Mangan alleges that upon his termination, in the face of an asset sale, he could have obtained "a fair price" for his shares, Third-Party Complaint ¶ 36, Mangan also alleges that under the Revised Employment Agreement, he was required to sell his shares to APW upon termination of his employment.  *Id.* ¶ 24.  However, nowhere in the body of the Third-Party Complaint does Mangan allege that either the Stockholders Agreement or the Revised Employment Agreement granted Mangan any right to compel a repurchase of his shares by Giardino and Greenberger or APW or APW Holding under any circumstances, including, as relevant, in the case of a sale of APW assets or stock or, for that matter, upon the termination of Mangan's employment

with APW.  Thus, as the Third-Party Complaint contains no allegation that the asset

sale of APW Holding, including Giardino and Greenberger's and Mangan's ownership

interests in APW and any associated good will sold to Mar-Cone as an APW Holding or

APW asset, was for other than cash, or that Mangan could compel a repurchase or

buy-back of his shares in either corporation upon termination of his employment with

APW, the Third-Party Complaint fails to plausibly allege that Giardino and Greenberger

breached a fiduciary duty that caused Mangan to lose the opportunity to shed his

ownership interest in APW prior to its sale thereby sidestepping potential liability to Mar-

Cone under the Mohawk Doctrine should Mangan decide to solicit APW customers for

a competitor, such as Servall, as Mangan's new employer.

    Contrary to Mangan's assertion, the result is the same even if Delaware law

applies, Third-Party Plaintiff's Memorandum at 7, as Third-Party Defendants contend.

Third-Party Defendants' Memorandum at 12 n. 3.  Specifically, under Delaware law, the

sale of assets of a Delaware corporation does not trigger any appraisal rights for a

dissenting shareholder.  *See Tanzer v. International General Industries, Inc.*, 402 A.2d

382, 390 (Del. Ch. 1979) (appraisal rights for minority shareholders are not available on

a sale of corporate assets).  Nor, as indicated in its discussion of New York law

pertaining to this issue, Discussion, *supra*, at 40-43, has the court's research revealed

any Delaware law that provides a minority non-voting shareholder, like Mangan, with a

right to demand repurchase of shares by the corporation's other shareholders in the

event of an asset sale absent a provision granting such right in an enforceable

shareholders agreement.  Significantly, as discussed, Discussion, *supra*, at 39,

although Mangan alleges that had he been correctly informed that the sale was an

44

asset sale he could have terminated his employment and "obtained fair value" for his shares, Third-Party Complaint ¶ 36, the allegation fails to expressly state that APW, APW Holding or the majority shareholders would thereupon be required to repurchase Mangan's shares.  Notably, Mangan's only allegation regarding the relationship of his possible termination and a possible stock repurchase or buy-back requirement, states that under the Revised Employment Agreement APW enjoyed a right to compel Mangan to sell his stock to APW, a call, not a right or put enuring to Mangan to sell his stock to APW, APW Holding or Giardino and Greenberger.  Mangan's insistence that such repurchase rights existed as he has attempted to plead them in the Third-Party Complaint is therefore wholly illusory and illusory allegations by definition cannot be considered as plausible.   Accordingly, Mangan fails to plausibly allege facts upon which the court can conclude that Third-Party Defendants owed Mangan any special duty upon which to predicate a contribution claim because under neither New York nor Delaware corporation law, as specified by Mangan, does such a duty exist.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombley*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  Here, no facts are alleged by Mangan demonstrating the plausible existence of any form of fiduciary duty owed by Giardino and Greenberger to Mangan under either New York or Delaware law relevant to support Mangan's Contribution Claims.

Mangan's First Claim fails for a second reason. Even if the fiduciary duties

45

applicable to the relationship between majority and minority shareholders, as alleged by

Mangan, could be found to exist under New York or Delaware law, New York law also

requires that to claim contribution the predicate special duty owed to a defendant by a

third-party, like the breach of duty alleged by the plaintiff against the defendant in the

main action, must also arise in tort so as to render, in the event of breach by the party

from whom contribution is sought, such party a "joint," "concurrent, successive,

independent, alternative [or] . . . intentional <u>tort feasor</u>."  *Sargent,* 517 N.E.2d at 1364

(citing authorities) (underlining added).  Thus, unless the special duty asserted against

the contributing third-party by a defendant sounds in tort, the third-party, even if a

breach is established, does not become a tortfeasor for purposes of §1401, and the

allegations fall outside the scope of §1401.  *Id.* ("the existence of some form of tort

liability is a prerequisite to application of [§1401].").  In considering whether a duty is

created by tort, and thus within § 1401 or by contract, and thus without §1401, *id.*

(potential liability to plaintiff for "contractual benefit" does not qualify as grounds for

related contribution claim) or in combination and so within § 1401, depends, first, on

whether the duty asserted arises by operation of law "as a matter of social policy,"

*Sommer*, 593 N.E.2d at 1368, "the nature of the injury, the manner in which the injury

occurred and the resulting harm," *id.* at 1369, *i.e.*, whether the claim was one for a

"personal injury or property damage," as result of an "abrupt," or "cataclysmic

occurrence," or one for enforcement of a "bargain."  *Id.*  "The determining factor as to

the availability of contribution is not the theory behind the underlying claim but the

measure of damages sought."  N.Y. Jur. 2d Contribution, Indemnity and Subrogation

Vol. 23 § 52 at 87 (quoting *Rothberg v. Reichelt*, 705 N.Y.S.2d 115, 118 (3d Dep't.

2000) (quoting *Rockefeller Univ. v. Tishman Const. Corp. of N.Y.*, 659 N.Y.S.2d 460, *lv.*

*denied*, 691 N.E.2d 63 (N.Y. 1999))).  *See also Barbagallo v. Marcum LLP,* 2012 WL

1664238, at *11-12 (E.D.N.Y. May 11, 2012) (holding contribution not available for

breach of fiduciary duty where damages sought were limited to "purely economic loss"

which did not constitute injury to property), and  *Strategem Development Corporation*,

153 F.R.D. at 551 (court to consider "nature of injury, the manner in which the injury

occurred and the resulting harm" in determining whether claim alleges tort or contract

breach for purposes of finding contribution claim valid under § 1401).  Additionally, New

York law defines 'injury to property' as 'an actionable act, whereby the estate of another

is lessened, other than a personal injury or the breach of a contract.'" *Sargent*, 517

N.E.2d at 1364, n. 2 (quoting N.Y. Constr. Law § 25-b).[26]  Significantly, Mangan does

not allege that as a result of Giardino and Greenberger's violation of the purported

fiduciary duties as asserted by Mangan he suffered a diminution in the value of his

shares or other property interests in APW.  Nor does Mangan claim that Giardino and

Greenberger's alleged violations reduced his income following the APW sale to Mar-

Cone or otherwise caused harm to person or property.  To the contrary, Mangan's

allegations indicate that following Giardino and Greenberger's supposed breaches of

the alleged fiduciary duties Mangan remained employed by APW after its sale to Mar-

Cone.  Third-Party Complaint ¶ 36 (if Giardino and Greenberger had correctly disclosed

to Mangan the APW sale was an asset sale "Mangan would have had the right to

terminate his employment" with APW); Mangan Affidavit II ¶¶ 8, 13 (after sale

---

[26]  This definition remains in effect.  *See* N.Y. Gen. Constr. Law § 25-6 (Thomson Reuters,
Westlaw through 2012).

consummated Mangan employed by Mar-Cone until terminated without cause in March 2010)

Regulations affecting corporate governance and ownership interests represent a balancing of public and private interests, and actions to enforce such rules do not necessarily arise from misconduct involving a breach of duty of a tortious nature. Rather, such violations often seek redress for economic losses or to enforce other benefits arising from a shareholder agreement or statutory rights similar to the stock repurchase rights alleged by Mangan to constitute a fiduciary duty as a predicate to his Contributions Claims. *Compare Alpert v. 28 Williams Street Corp.,* 473 N.E.2d 19, 28-29 (N.Y. 1984) (freeze-out merger by majority shareholders adopted without regard to best interest of corporation as a whole including interest of minority violates fiduciary duty warranting equitable relief including recission) *with Vernon v. Rock-Lodge House, Inc.*, 266 N.Y.S.2d 556, 558 (S.Ct. N.Y. Cnty. 1966) (action by minority shareholder for accounting of illegal transfers of corporation property and funds is one for waste of corporation assets and an action "for injury to property sounding in tort."). *See also Theodore Trust U/A Dated December 30, 1971 v. Smadbeck*, 717 N.Y.S.2d 7, 8 (1st Dep't. 2000) ("Pursuant to Business Corporation Law § 623, the right to appraisal is the exclusive remedy for stockholders dissenting to the terms upon which a corporation has offered its shares for sale in the context of a corporate merger, except that an action in equity is permissible to challenge fraudulent or illegal corporate activity."), *lv. to appeal denied.*, 746 N.E.2d 185 (N.Y. 2001). Thus, because Mangan's breach of fiduciary duty against Giardino and Greenberger based on lack of prior notice of the APW sale and a lost opportunity to effect a stock buy-back particularly prior thereto does not involve an

injury to any property interest of Mangan or, more relevantly, Mar-Cone warranting tort-like compensatory damages, Mangan's relief for such breaches would be limited to equitable relief to place, through recission, his stock ownership position in a status which excluded a possible application of the Mohawk Doctrine.  Specifically, as noted, Mangan does not assert the value of his shares were reduced, or his personal assets impaired, as a result of Giardino and Greenberger's alleged breaches of their fiduciary duties to Mangan nor does he allege such breaches triggered a loss of Mar-Cone's good will acquired in its purchase of APW.  In fact, Mangan continued to be employed by Mar-Cone after the sale and joined Servall in July 2010.  Thus, such fiduciary duties do not protect against an injury to property as a result of an "abrupt" or cataclysmic occurrence "the avoidance of which is the objective of a duty imposed as a matter of "social policy." *Sommer*, 593 N.E.2d at 1368-69.  Moreover, treating Mangan's creative fiduciary duty breach theories as tortious would potentially expand the scope of New York remedies for such intra-corporate breaches, beyond well-established statutory and judicial limits.  As such, courts should be wary of accepting such a proposed expansion in the absence of judicial authority or legislative action.  Because such relief is not tort-like by providing, for instance, compensatory damages, N.Y. Jur. 2d Contribution, Indemnity and Subrogation Vol. 23 § 53 at 87 (measure of damages critical factor in determining whether claim is tortious to support contribution), neither is the breach of the fiduciary duties alleged by Mangan in support of his contribution claims against Giardino and Greenberger under § 1401.  That Mangan has not alleged a tort is further evident by Mangan's failure to seek compensatory relief for breach of fiduciary duty as alleged for it is axiomatic that compensatory damages are available as tort relief,

whereas in equity actions courts have discretion to award relief particular to the circumstances of the action. *Compare Mandel v. Mandel*, 439 N.Y.S.2d 576, 577 (Sup. Ct., Queens Cty. 1981) ("What distinguishes an action at law from an action in equity is that an action at law is a proceeding where the relief afforded is ordinary pecuniary damages, while an action in equity permits the court the discretionary power to adapt the relief to the circumstances of the case." (citing Reubens v. Joel, 13 N.Y. 488, 493-94 (1856)), *with Harris v. Standard Accident and Insurance Company*, 297 F.2d 627, 631-32 (2d Cir. 1961) ("The purpose of tort damages is to compensate an injured person for a loss suffered and only for that. The law attempts to put the plaintiff in a position as nearly as possible equivalent to his position before the tort. Recovery is permitted not in order to penalize the tortfeasor, but only to give damages 'precisely commensurate with the injury.'" (quoting *Gressman v. Morning Journal Assoc.*, 90 N.E. 1131, 1133 (N.Y. 1910) (footnotes omitted))), and *McDougald v. Garber*, 536 N.E.2d 372, 374 (N.Y. 1989) ("an award of damages to a person injured by the negligence of another is to compensate the victim, not to punish the wrongdoer. The goal is to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred." (internal citations omitted)). Accordingly, the breach of fiduciary duties asserted by Mangan does not arise in tort and their breach by Giardino and Greenberger does not render Giardino and Greenberger as tortfeasors, a prerequisite for contribution under § 1401.

Mangan relies on *In re Crazy Eddie Securities Litigation*, 802 F.Supp. 804 (E.D.N.Y. 1992) in support of his Contribution Claims. Third-Party Plaintiff's Memorandum at 10. In this securities fraud case, defendant Peat Marwick, a public

accounting firm accused of securities law violations, sought contribution from a third-party accountant responsible for the books and records of the business entity at the center of the lawsuit, *In re Crazy Eddie Securities Litigation*, 802 F.Supp. at 814, based on third-party plaintiff's theory that the third-party defendant had falsely represented that the business's financial records upon which Peal Marwick had relied were complete and accurate. *Id.* In sustaining the contribution claim, the court found that although the alleged fraudulent conduct arose from a contractual relationship, the third-party defendant had an independent duty not to engage in fraudulent misconduct in the course of the relationship, *id.* at 815, conduct constituting a "proper claim in tort" under New York law and therefore a valid predicate for contribution. *Id.* By contrast, as the misconduct attributed to Giardino and Greenberger as the basis for Mangan's Contribution Claims arises from a breach of fiduciary duties, not tortious in nature, *In re Crazy Eddie Securities Litigation*, is inapposite and provides no support for Mangan's opposition to Third-Party Defendants' motion.

Mangan's First Claim also fails for a third reason. In order to impose contribution upon a third party based on a violation of a special duty owed to the defendant, it must be established by the defendant seeking contribution that "the breach of duty by the contributing party . . . had a part in causing or augmenting the injury for which contribution is sought." *Nassau Roofing & Sheet Metal Co.*, 523 N.E.2d at 805 (N.Y. 1988). A fair reading of Mangan's First claim indicates that nowhere does Mangan allege any facts which, assuming their truth, plausibly explain how Giardino and Greenberger's supposed violations of their fiduciary duties, even assuming their existence under applicable law and their sufficiently tort-like nature, could conceivably

have resulted in any enlargement of Mar-Cone's injuries to its good will based on

Mangan's violations of the Mohawk Doctrine.  Rather, after asserting Giardino and

Greenberger's breach of the alleged fiduciary duties under New York law, the Third-

Party Complaint alleges in conclusory fashion that any liability to Mar-Cone imposed

against Mangan under the Mohawk Doctrine "will have been caused and brought about,

in whole or in part, by the breach of fiduciary duties owed by Greenberger and/or

Giardino," Third-Party Complaint ¶ 40, thus entitling Mangan to contribution.  Under

New York law, "[a] showing of proximate cause requires plaintiffs to demonstrate that

defendant's alleged negligent acts were a substantial cause of the event which

produced plaintiffs' injuries."  *Licci v. American Express Bank, Ltd.*, 704 F.Supp. 403,

410 (S.D.N.Y. 2010) (citing *Derdiarian v. Felix Contracting Corp.* 414 N.E.2d 666, 670

(1980)).  Here, no facts are posited by the Third-Party Complaint which illuminate the

path of Mangan's logic as to how, even if it is assumed Giardino and Greenberger

violated a fiduciary duty with respect to a required correct notice of the APW asset sale

and the existence of Mangan's right to obtain repurchase of his shares, following the

APW sale, Mangan was instigated or impelled to violate his ensuing Mohawk Doctrine

duties to Mar-Cone's detriment as a proximate result of Giardino and Greenberger's

breaches of such fiduciary duties.  For instance, Mangan fails to allege that Giardino

and Greenberger somehow encouraged or even were aware of and condoned such

subsequent misconduct by Mangan as Mar-Cone alleges, nor does Mangan attempt to

assert Giardino and Greenberger duped Mangan into engaging in the prohibited

solicitations of former customers and other violations of his agreements with Mar-Cone

or that they had any reason to suspect or reasonably foresee prior to their supposed

fiduciary violations that following the sale, Mangan would feel justified in violating or otherwise be likely to violate his Mohawk Doctrine duties as a seller of APW's good will as a result of their breaches.  While Mangan maintains that as an involuntary seller he was advised "he was not subject to the Mohawk Doctrine," Mangan Affidavit II ¶ 14, Mangan does not allege he was so advised prior to the sale or that Giardino and Greenberger were made aware of this advice.  In short, the Third-Party Complaint is bereft of any facts upon which the requisite contribution to Mar-Cone's Mohawk Doctrine claims for loss of APW goodwill could plausibly be found to have resulted from Giardino and Greenberger's alleged breach of any fiduciary duty, even assuming they were sufficiently tortious in nature for § 1401 purposes, owed to Mangan.  Mangan's contention that his decision to violate the Mohawk Doctrine by soliciting APW customers was a reasonably foreseeable result proximately caused by Giardino and Greenberger's alleged breach of any fiduciary duty constituting a jury question, Mangan Memorandum at 10-13, simply ignores the dearth of pleaded facts upon which such a determination could rationally be made.  *Licci*, 704 F.Supp.2d at 410 (applying *Twombly-Iqbal* test to whether plaintiff has adequately pleaded facts upon which to establish proximate cause and finding plaintiff had pleaded no facts upon which it could be found that defendant had any "reason to believe" its public banking transaction would facilitate third party actions causing harm to victims, dismissing  complaint pursuant to Rule 12(b)(6)).  As such, Mangan's allegation and argument amount to implausible speculation, and thus an insufficient basis in fact to support Mangan's contribution claim.  *Licci*, 704 F.Supp.2d at 403 (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting

*Twombly*, 550 U.S. at 555)).  Thus, Mangan's First claim fails to state a claim for contribution under § 1401 on this ground as well,[27] and, accordingly it should be DISMISSED.

**7.**     **Mangan's Second Contribution Claim Based on Greenberger's Misrepresentation to Mangan Regarding the Asset or Stock Sale of APW.**

Mangan's Second Claim for contribution, directed against Third-Party Defendant Greenberger, alleges Greenberger misrepresented to Mangan that the sale of APW to Mar-Cone was a stock sale, a material fact upon which Mangan reasonably relied to his detriment in failing to divest himself of his ownership interest in APW prior to its sale, thereby rendering Greenberger liable for any damages against Mangan that may be awarded to Mar-Cone resulting from Mangan's subsequent violation of Mar-Cone's rights based on the Mohawk Doctrine as alleged under Mar-Cone's Third Claim.  Third-Party Complaint ¶ ¶ 42-46.  As with Mangan's First Claim, under which Mangan maintains he could have escaped application of the Mohawk Doctrine by compelling Third-Party Defendants or APW Holding to buy out his ownership interest in APW prior to the asset sale to Mar-Cone, Third-Party Complaint ¶ 36, in support of his Second

---

[27]     Mangan's argument in opposition to Third-Party Defendants' motion, Mangan Memorandum at 13, that Giardino and Greenberger "set Mangan up" by their fiduciary failures suggesting that Giardino and Greenberger should be charged with the expectation that Mangan would find himself compelled to engage in the prohibited solicitations are not so stated in the Third-Party Complaint and as such are irrelevant. Plaintiff's belated assertion may not be raised for the first time in motion papers. *See Wright v. Ernst & Young, LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint to assert securities fraud claim by raising issue for first time in legal memorandum filed in opposition to summary judgment); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y. 1977) (plaintiff may not amend factual allegations of complaint by averment in memorandum of law in opposition to motion to dismiss). Further, nowhere in the Third-Party Complaint is it alleged that Mangan was improperly terminated by Mar-Cone or that he was not also prohibited from such solicitations under other valid agreements with Mar-Cone.  Rather, the gravamen of the Third-Party Complaint is that but for Giardino and Greenberger's breach of the stated fiduciary duties, Mangan could have compelled a repurchase of his APW shares, a right the existence of which is illusory as a matter of law.  As such, Mangan's reliance upon New York caselaw regarding intervening causes, Mangan Memorandum at 10-13, is irrelevant.

Contribution Claim Mangan alleges Greenberger's misrepresentation was intended to mislead or lull Mangan into believing that the sale of APW to Mar-Cone was in fact a stock sale, and that his employment with APW was "secure and/or he [Mangan] did not have the right to demand that APW repurchase his stock prior to any such sale," *id.* ¶ 44, as in such stock sale Mar-Cone would become a successor to APW's obligations to Mangan under the Revised Employment Agreement.  *Id*.  Also, like Mangan's First Claim for Contribution, Mangan contends that because New York law permits a contribution claim against a contributing party based on a violation of a duty owed to Mangan, such as Greenberger's alleged misrepresentation, which is different from that alleged by a plaintiff against a defendant in the underlying action, here Mar-Cone's Mohawk Doctrine Claim against Mangan, contribution from Greenberger based on Greenberger's alleged misrepresentation is not precluded so long as Greenberger's breach of duty to Mangan not to engage in a misrepresentation related to the APW sale "had a part in causing or augmenting the injury for which contribution is sought."  Third-Party Plaintiff's at 8-9 (quoting *Nassau Roofing,* 523 N.E.2d at 803).

In opposition, Third-Party Defendants argue Mangan has failed to allege "specific acts" by either Giardino or Greenberger which could support a finding that Greenberger's misrepresentation to Mangan rendered Mangan subject to the Mohawk Doctrine and a substantial factor in prompting Mangan's subsequent violation of the Mohawk Doctrine.  Third-Party Defendants' Reply at 5.  Third-Party Defendants contend that the pleadings demonstrate Mangan was not misled as to the asset nature of the APW sale, Mangan did not reasonably rely on Greenberger's representation, and Mangan failed to allege facts upon which he could have avoided Mohawk Doctrine

liability.  Third-Party Defendants' Memorandum at 1; Third-Party Defendants' Reply at 8-11.  Third-Party Defendants further assert Mangan has failed to sufficiently plead any causal relationship between the alleged breaches of duty on the part of Giardino and Greenberger and Mar-Cone's damages resulting from Mangan's violation of the Mohawk Doctrine.  Third-Party Defendants' Memorandum at 13-15.  Mangan's Second Claim fails on each of these grounds.

Under New York law, a claim for intentional or negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was materially incorrect; and (3) reasonable reliance on the misinformation to plaintiff's detriment.  *J.A.O. Acquisition Corp. v. Stravitsky*, 863 N.E.2d 585, 587 (N.Y. 2007).  The elements of an intentional misrepresentation claim include "misrepresentation of a material fact, falsity, *scienter*, deception and injury."  *Callahan v. Callahan*, 514 N.Y.S.2d 819, 821 (3d Dep't. 1987).  *Accord New York University v. Continental Insurance Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) ("The essential elements for a cause of action for [intentional] fraud are 'representation of a material existing fact, falsity, *scienter*, deception and injury.'" (quoting *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 151 N.E.2d 833, 835 (N.Y. 1953) (bracketed material added))).

As discussed, Discussion, *supra*, at 48-49, majority shareholders have a fiduciary duty to candidly advise minority shareholders of the terms of a proposed merger involving cancellation of the minority's shares in the corporation and to structure the proposed transaction fairly in the best interest of the corporation as a whole.  *See*

*Alpert,* 473 N.E.2d at 26-27.  Further, majority shareholders in a closely held corporation owe a fiduciary duty to the minority shareholders to disclose information material to the minority shareholders' consideration of the majority's offer to purchase the minority's shares.  *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1001 (N.Y. 2011) (dismissing complaint seeking damages based on fraud, breach of fiduciary duty, breach of contract and unjust enrichment where plaintiffs failed to establish reasonable reliance on alleged misrepresentation) (citing *Fender v. Prescott*, 479 N.E.2d 225, 225-26 (N.Y. 1985))).  Thus, upon the facts as pleaded, although the Third-Party Complaint alleges a special or privity-like relationship of a fiduciary nature between Mangan as a minority shareholder and Greenberger as a majority shareholder sufficient to impose a duty not to misrepresent to minority shareholders material facts relevant to the proposed sale of APW, as it does not allege that Greenberger thereby engaged in fraud by misrepresentation or withholding of material information resulting in any financial loss to Mangan arising from the APW sale, the alleged misrepresentation is not based on a duty arising in tort and so cannot render Greenberger a tortfeasor as necessary to support a contribution claim pursuant to §1401.  *See Sommer,* 593 N.E.2d at 1370 (a duty is not tortious unless its object is to avoid personal injuries for property damage based on cataclysmic occurrences).  Moreover, as the fiduciary duty to provide a minority shareholder with complete and accurate information is enforceable only through equitable relief, *Alpert*, 433 N.E.2d at 26, such form of relief also negates the notion that the duty is based on tort.  Discussion, *supra*, at 48-49.  Thus, as Mangan does not assert such monetary damage or other financial losses to himself or Mar-Cone, but only a duty relating to internal

corporate relationship enforceable solely by equitable relief, the duty upon which

Mangan relies is not one arising in tort and so does not qualify as a prerequisite for

contribution under § 1401.

Assuming, *arguendo*, that the alleged duty Greenberger owed to Mangan was

tortious and not solely of a fiduciary nature, to be cognizable the alleged

misrepresentation attributable to Greenberger must be pleaded as being material.  A

misrepresentation of fact is material if, in the context of the information known to the

recipient, the correctness of the alleged fact would have made a difference to the

recipient in deciding upon future action.  *See List v. Fashion Park, Inc.,* 340 F.2d 457,

462 (2d Cir. 1965) (describing test for "materiality" as "whether 'a reasonable man

would attach importance (to the fact misrepresented) in determining his choice of action

in the transaction in question'" (citing Restatement, Torts § 538(2)(a))); *Lama Holding*

*Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) ("In an action to recover

damages for fraud, the plaintiff must prove a misrepresentation or a material omission

of fact which was false and known to be false by defendant, made for the purpose of

inducing the other party to rely upon it, justifiable reliance of the other party on the

misrepresentation or material omission, and injury." (citing cases)); *Black's Law*

*Dictionary* 1091 (9th ed. 2009) (defining "material misrepresentation" in the context of

torts as "[a] false statement to which a reasonable person would attach importance in

deciding how to act in the transaction in question or to which the maker knows or has

reason to know that the recipient attaches some importance" (citing Restatement

(Second) of Torts § 538 (1979))).

Here, Mangan does not assert that Greenberger's alleged misrepresentation

concerning the asset or stock sale nature of the APW sale related to the fairness of the terms of sale of Mangan's shares or other aspects of the transaction including the exercise of any rights available to minority shareholders in the case of a stock or asset sale of APW Holding pursuant to relevant provisions of the Stockholders Agreement. Nor does Mangan allege he could have prevented the sale of his shares as he concedes that, under the Stockholder Agreement, Giardino and Greenberger as majority shareholders had the sole authority to sell the stock of APW and to require Mangan's participation.  Third-Party Complaint ¶ 23; Mangan Affidavit II ¶ 8 (conceding Mangan's minority non-voting shares were subject to "Drag-Along" obligations in the event of a sale of APW Holding stock or its assets).  Rather, according to the Third-Party Complaint, Mangan's theory is that the misrepresentation was material because it prevented Mangan from disposing of his APW ownership by tendering his shares for repurchase prior to the sale thereby avoiding becoming a seller for purposes of the Mohawk Doctrine.  But, as explained, Discussion, *supra*, 42-45, under New York and Delaware law, in the absence of a shareholders agreement providing for a compulsory repurchase, or a put, of a minority shareholder's stock in the event of a sale of APW, a critical fact notable for its absence from the text of the Third-Party Complaint, no such right to command a repurchase or buy-back of Mangan's shares existed prior to the APW sale.  Nor does Mangan allege he was concerned about becoming subject to the Mohawk Doctrine or even that he was aware of it prior to the sale.  Third-Party Plaintiff's Memorandum at 9 ("Simply stated he [Mangan] was unaware of [the Mohawk Doctrine]").  Thus, regardless of whether the APW sale was to be an asset sale, and Greenberger misrepresented to Mangan the transaction was to be a stock sale as

Mangan alleges, Mangan would have inevitably become, according to his own allegations, because Giardino and Greenberger could compel the sale of Mangan's shares in APW, a selling shareholder or owner of APW regardless of Greenberger's misrepresentation and even a representation, assuming it was accurate regarding the facts of the sale, could not, based on the Third-Party Complaint's allegations, have changed that result.  Accordingly, based on Mangan's pleadings, Mangan could not, regardless of the truth or falsity of Greenberger's initial representation to Mangan regarding the nature of the APW sale, have avoided being subject to the Mohawk Doctrine following the sale of APW to Mar-Cone.  Simply, the alleged misrepresentation could not have made any difference to Mangan's legal position either before or after the APW sale, and the Third-Party Complaint therefore does not plausibly state the misrepresentation was material to any future decisions by Mangan resulting from the APW sale, an essential element of the duty not to misrepresent material facts to Mangan as a minority shareholder, assuming the duty to arise in tort, alleged by Mangan as a basis for contribution against Greenberger.

Additionally, Mangan has failed to plausibly allege he reasonably relied on Greenberger's misrepresentation concerning the asset nature of the APW sale. Because, as explained, Discussion, *supra*, at 56-60, Mangan's position as a seller of his ownership interest in APW could not have been avoided regardless of whether the sale was structured as an asset or stock sale, Mangan's reliance upon the misrepresentation is based on a mistaken belief, reflected repeatedly in his allegations, that he could have compelled a repurchase, or put, of his APW Holding or APW shares if he had realized the transaction was an asset sale.  However, allegations of fact or law grounded upon a

mistaken belief regarding their existence fail to plausibly allege elements essential to a valid cause of action.  *See Manza v. Newhard*, 2012 WL 917286, at *2 (2d Cir. Mar. 20, 2012) (claim of official abuse "cannot be deemed plausible when . . . conclusory pleadings are unsupported by factual content . . .."); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2010 ("Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." (citing *Twombly*, 550 U.S. at 555)).

Finally, even if Mangan has adequately alleged tortious misrepresentation against Greenberger, thus creating a duty owed to Mangan based on tort, where the contributing party is not sued by a plaintiff, in addition to a breach of duty owed to a defendant rendering the third party a tortfeasor, § 1401 requires that such wrongdoer's conduct be shown to have caused or enhanced the plaintiff's injury and damages. *Nassau Roofing & Sheeting Metal Co.*, 523 N.E.2d at 803.  Mangan, however, makes no attempt to allege facts upon which it could conceivably be found that Greenberger's misrepresentation somehow caused Mangan to violate his duty to refrain from soliciting existing APW customers following its sale to Mar-Cone and upon joining Mar-Cone's competitor Servall.  Rather, Mangan merely states in conclusory terms that, based on Greenberger's misrepresentation regarding the nature of the APW sale, Mangan is entitled to contribution from Greenberger for any damages assessed upon Mar-Cone's Mohawk Doctrine claim against Mangan.  Third-Party Complaint ¶ 46.  Mangan's contention, Third-Party Plaintiff's Memorandum at 10-14, that the relationship between Greenberger's alleged misrepresentation and Mangan's alleged violation presents solely a question of causation for the jury ignores the paucity of allegations

demonstrating any facts upon which such asserted causality could conceivably be established.  *See Manza*, 2012 WL 917286, *2 (2d Cir. Mar. 20, 2012) (conclusory pleadings insufficient to state plausible cause of action); *Kiobel*, 621 F.3d at 2010 (same).  For example, Mangan's subsequent discovery of Greenberger's alleged misrepresentation following the sale of APW and prior to Mangan's decision to join Servall is not alleged by Mangan to have compelled or induced Mangan to violate Mar-Cone's rights under the Mohawk Doctrine and Mangan makes no allegation that his alleged violation was other than voluntary.  Nor has Mangan alleged that prior to the Greenberger misrepresentation Greenberger had reason to believe that because of the alleged misrepresentation, Mangan was likely to violate the Mohawk Doctrine.  As noted, Mangan does not assert he was even aware of the Mohawk Doctrine prior to the sale.  Thus, Mangan has failed to allege facts permitting the court to conclude that it was plausible that Mar-Cone's damages proximately resulting from Mangan's Mohawk Doctrine violations were enlarged by Greenberger's violation of a duty owed to Mangan as a substantial factor in causing such damages.  *See Licci,* 704 F.Supp. 2d at 410-11 (issue of proximate cause subject *Iqbal-Twombly* plausibility test).

## CONCLUSION

Based on the foregoing, Third-Party Defendants' motion (Doc. No. 119) should be GRANTED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:        June 4, 2012
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        June 4, 2012
                    Buffalo, New York